FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHALUMEAU POWER SYSTEMS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 11-1175 (RGA) |
| | ) | |
| ALCATEL-LUCENT, ALCATEL-LUCENT USA INC. and ALCATEL-LUCENT HOLDINGS INC., | ) | PUBLIC - REDACTED VERSION |
| | ) | |
| Defendants. | ) | |

**ALCATEL-LUCENT'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Paul Saindon (#5110)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
psaindon@mnat.com

*Attorneys for Alcatel-Lucent USA Inc. and Alcatel-Lucent Holdings Inc.*

OF COUNSEL:

J. Anthony Downs
Lana S. Shiferman
Robert Frederickson III
GOODWIN PROCTER LLP
53 State Street
Boston, MA 02109
(617) 570-1000

Original Filing Date: February 14, 2014
Redacted Filing Date: February 14, 2014

## TABLE OF CONTENTS


I. NATURE AND STAGE OF THE PROCEEDINGS ..... 1

II. INTRODUCTION AND SUMMARY OF ARGUMENT ..... 1

III. STATEMENT OF FACTS ..... 4
- A. Background ..... 4
- B. Chalumeau's Enforcement Activity and the RPX License Agreement ..... 5
- C. Chalumeau's Case Against Alcatel-Lucent ..... 6
- D. Chalumeau's Infringement Theory ..... 7

IV. THE COURT SHOULD FIND THIS CASE EXCEPTIONAL UNDER § 285 AND ALCATEL-LUCENT SHOULD BE AWARDED ITS ATTORNEYS' FEES ..... 8
- A. Legal Standard ..... 8
- B. Alcatel-Lucent is the Prevailing Party ..... 9
- C. Chalumeau's Infringement Theory and Claim Construction Positions Was Frivolous and Vexatious. ..... 10
- D. Chalumeau's Subjective Bad Faith and Litigation Misconduct Makes This Case Exceptional ..... 14

V. ALCATEL-LUCENT'S ATTORNEYS FEES AND COSTS ARE REASONABLE AND SHOULD BE AWARDED ..... 19

VI. CONCLUSION ..... 20

# TABLE OF CONTENTS

**CASES**

*Adaptix, Inc. v. Alcatel-Lucent USA, Inc. et al*,
6:12-cv-00022 (E.D. Tex.) .......... 4

*Brooks Furniture Mfg., Inc. v. Dutailer Int'l, Inc.*,
393 F.3d 1378 (Fed. Cir. 2005) .......... 8, 13

*Callaway Golf Go. v. Slazenger*,
384 F. Supp. 2d 735 (D. Del. 2005) .......... 10

*Chalumeau Power Systems, LLC v. Avaya, Inc. et al.*,
C.A. No. 11-572-RGA (D. Del.) .......... 5

*Chalumeau Power Systems, LLC v. D-Link Systems, Inc. et al.*,
C.A. No. 11-771-RGA (D. Del.) .......... 5

*Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*,
524 F.3d 1254 (Fed. Cir. 2008) .......... 9

*Eltech Sys. Corp. v. PPG Indus.*,
903 F.2d 805,810-11 (Fed. Cir. 1990) .......... 10, 13

*Eon-Net LP v. Flagstar Bancorp*,
653 F.3d 1314 (Fed. Cir. 2012) .......... 14, 16

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .......... 19

*Highmark, Inc. v. Allcare Health Management Sys., Inc.*,
687 F.3d 1300 (Fed. Cir. 2012), *cert granted*, 134 S.Ct. 48 (Oct. 1, 2013) .......... 2, 8

*iLOR, LLC v. Google Inc.*,
631 F.3d 1372 (Fed. Cir. 2011) .......... 14

*Kilopass Tech., Inc. v. Sidense Corp.*,
738 F.3d 1302 (Fed. Cir. 2013) .......... Passim

*Labyrinth Optical Techs LLC v. Alcatel-Lucent USA Inc.*,
8:12-cv-00759 (C.D. Cal.) .......... 4

*Lam, Inc. v. Johns-Manville Corp.*,
718 F.2d 1056 (Fed. Cir. 1983) .......... 19

*Lambda Optical Solutions v. Alcatel Lucent SA, et al.*,
10-487-RGA-CJB (D. Del.) ....................4, 7

*MarcTec, LLC v. Johnson & Johnson*,
664 F.3d 907 (Fed. Cir. 2012) ....................13, 14

*Mathis v. Spears*,
857 F.2d 749 (Fed. Cir. 1988) ....................19

*Micromesh Tech. Corp. v. Am. Recreation Prods., Inc.*,
No. C-06-6030, 2007 WL 2501783 (N.D. Cal. Aug. 30, 2007) ....................15

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ....................11

*PSC Inc. v. Symbol Techs., Inc.*,
26 F. Supp. 2d 505 (W.D.N.Y. 1998) ....................18

*Raylon, LLC v. Complus Data Innovations, Inc.*,
700 F.3d 1361 (Fed. Cir. 2012) ....................12

*Sanofi-Aventis v. Sandoz, Inc.*,
272 F.R.D. 391 (D. N.J. 2011) ....................17

*Shared Memory Graphics, LLC v. Apple, Inc.*,
812 F. Supp. 2d 1022 (N.D. Cal. 2010) ....................15

*Summit Data Systems, LLC v. EMC Corp. et al.*,
C.A. No. 10-749 (GMS) (D. Del.) ....................18, 19

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
549 F.3d 1381 (Fed. Cir. 2008) ....................20

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
726 F.3d 1306 (Fed. Cir. 2013) ....................9, 13

**RULES AND STATUTES**

35 U.S.C. § 285 ....................Passim

Fed. R. Civ. P. 11 ....................8, 15

Fed. R. Civ. P. 30(b)(6) ....................Passim

Fed. R. Civ. P. 41(a)(2) ....................1

Fed. R. Civ. P. 54(d) ....................20

L.R. 54.1 (c) ....................10

## I. NATURE AND STAGE OF THE PROCEEDINGS

Chalumeau Power Systems, LLC filed this case on November 29, 2011, alleging that networking equipment that complies with an industry standard for supplying power over Ethernet cables ("PoE") infringes U.S. Patent No. 5,991,885 (the "885 Patent"). The Court held a *Markman* hearing on September 20, 2013, and issued its Memorandum Order on October 30, 2013. D.I. 136. Fact discovery closed on November 15, 2013. On January 28, 2014, Chalumeau filed a motion to dismiss the case with prejudice under Fed. R. Civ. P. 41(a)(2), which the Court granted on January 31, 2013. D.I. 150, 153. Alcatel-Lucent USA, Inc. and Alcatel-Lucent Holdings, Inc. (collectively, "Alcatel-Lucent") now ask this Court to exercise its discretion under 35 U.S.C. § 285 to find this an "exceptional case" and to award its reasonable attorneys' fees spent defending against Chalumeau's frivolous and vexatious claims.

## II. INTRODUCTION AND SUMMARY OF ARGUMENT

This case is exceptional under 35 U.S.C. § 285 because it would be a "gross injustice" if Alcatel-Lucent were forced to bear the full cost of defending itself against Chalumeau's frivolous claims of infringement. From the start, Chalumeau presented Alcatel-Lucent with a Hobson's choice—pay Chalumeau hundreds of thousands of dollars to settle quickly or potentially spend millions to defend itself in litigation. In its motion to dismiss this case with prejudice, Chalumeau points to changes in the "economics of the case" as the basis for its dismissal. *See* D.I. 150 at 2. In reality, the economics of this case have been the same from its inception when Acacia Research Group LLC ("Acacia"), Chalumeau's parent, strategically made a settlement demand of $800,000, making it less expensive for Alcatel-Lucent to settle with Chalumeau early than defend itself on the merits. Rather than capitulate, however, Alcatel-Lucent chose to defend itself. As the case progressed through fact discovery, Chalumeau lost any leverage (driven solely by the cost of defense) it once had, and the Court's decisions firmly

supported Alcatel-Lucent's belief that Chalumeau's infringement allegation was baseless. On November 6, 2013, one week after the Court's Memorandum Order on claim construction that rejected nearly all of Chalumeau's proffered claim constructions and one week before the scheduled close of fact discovery, Alcatel-Lucent informed Chalumeau that it was going to seek leave to file summary judgment. Stripped of the only bargaining chip it had—the high cost of patent litigation—and knowing that its case had no merit, Chalumeau made a final attempt to settle the case for $100,000 in January 2014. When that was rejected, Chalumeau finally walked away. But not before Chalumeau tried to condition its dismissal on Alcatel-Lucent's agreement not to pursue its claim for attorney's fee and costs. When that too failed, Chalumeau tried to preclude Alcatel-Lucent's claim by inserting the provision that each party bear its own costs in the proposed Order that accompanied its motion to dismiss. *See* D.I. 150-1 ¶ 3.

That this case was always about the cost of litigation, and not the merits, was made apparent by Chalumeau's claim construction positions and its infringement contentions. Indeed, the Court need only look at its Memorandum Order on claim construction to find that this case was ***both*** objectively baseless ***and*** brought in subjective bad faith. *See Highmark, Inc. v. Allcare Health Management Sys., Inc.*, 687 F.3d 1300, 1308 (Fed. Cir. 2012), *cert granted*, 134 S.Ct. 48 (Oct. 1, 2013). In particular, Chalumeau's proposed constructions for two disputed terms—"network hub" and "adapter of a first type"—were unreasonable. During the *Markman* hearing, the Court commented that Chalumeau's proposed construction of "adapter of a first type" was "clearly not a proper construction" (*see* Hearing Tr. 98:22-99:10 (Ex. B)), and in its Memorandum Order on claim construction it noted that Chalumeau's proposed construction of "network hub" was "really no construction at all." *See* D.I. 136 at 5. Federal Circuit law is clear that a court may infer bad faith "from circumstantial evidence thereof when a patentee pursues claims that are devoid of merit" or "where the patentee is manifestly unreasonable in assessing

infringement, while continuing to assert infringement in court...." *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1311 (Fed. Cir. 2013) (quotations omitted). As set forth below, Chalumeau's claim construction positions were so frivolous as to warrant such an inference here.

Second, in addition to Chalumeau's frivolous claim construction positions and infringement allegations, there is evidence that Chalumeau's conduct throughout this case was aimed at maintaining its economic leverage through increasing Alcatel-Lucent's litigation costs. On the one hand, its prosecution of its case was minimalistic. Chalumeau's initial infringement contentions (based wholly on public information) were so sparse and conclusory that they suggest that Chalumeau did not perform an adequate investigation – either pre-suit or after the production of Alcatel-Lucent's core technical documents. It never answered or properly supplemented interrogatories directed towards core issues such as infringement, invalidity, and damages even though fact discovery closed in November 2013. On the other hand, it sought to drive Alcatel-Lucent's litigation costs up. Chalumeau forced needless motions practice and discovery—requiring Alcatel-Lucent to file a motion to dismiss its foreign parent when Chalumeau's sister company had recently dismissed the same foreign entity in another case under indistinguishable circumstances. It sought the deposition of Alcatel-Lucent's most senior executive, even though he had no relevant knowledge, in a transparent attempt to use the litigation process to harass Alcatel-Lucent and requiring it to seek a protective order. Chalumeau denied Alcatel-Lucent deposition testimony under Fed. R. Civ. P. 30(b)(6) and forced it to take needless depositions as it hid behind its own corporate structure. And, it opposed Alcatel-Lucent's timely motion to amend its answer to assert a license defense with no basis.

The economics of this case only stopped favoring Chalumeau *after* Alcatel-Lucent incurred substantial legal fees through fact discovery and claim construction and *after* Alcatel-Lucent informed Chalumeau that it was going to seek leave to file early summary judgment.

With fact discovery closed, the Court having issued its Memorandum Opinion on claim construction, and opening expert reports only weeks away, the baselessness of Chalumeau's infringement allegations, and recklessness with which it pursued them was about to be exposed. So more than two years after it first initiated this case, and after it forced Alcatel-Lucent to incur approximately $1,078,000 in attorneys' fees and $14,000 in expert costs, *see* Shiferman Decl. ¶¶ 4-5, Chalumeau finally walked away.

## III. STATEMENT OF FACTS

### A. Background

Acacia is a sophisticated patent licensing entity that has over 250 patent portfolios and has negotiated over 1,225 patent license agreements. *See* Ex. C at 4. Acacia operates its sole business of patent acquisition and licensing through a web of subsidiaries[1], which "are often required to engage in litigation to enforce their patents and patent rights." *See id.* at 8. Indeed, Acacia, through its subsidiaries, currently has three other lawsuits pending against Alcatel-Lucent. The first lawsuit Acacia brought against Alcatel-Lucent is pending in this very court and is scheduled to go to trial in early May. *See Lambda Optical Solutions v. Alcatel Lucent SA, et al.*, 10-487-RGA-CJB (D. Del.). The second lawsuit Acacia brought was the Chalumeau case. The third and fourth lawsuits are pending in the Eastern District of Texas and the Central District of California. *See Adaptix, Inc. v. Alcatel-Lucent USA, Inc. et al*, 6:12-cv-00022 (E.D. Tex.); *Labyrinth Optical Techs LLC v. Alcatel-Lucent USA Inc.*, 8:12-cv-00759 (C.D. Cal.).

Acacia acquired the '885 patent from Clarinet Systems, Inc. on April 4, 2011. Two months later, on June 6, 2011, Acacia formed Chalumeau and transferred the '885 patent to it.

---

[1] As discussed below, it appears that Acacia is involved in evaluating the patents it acquires. It then transfers the patents to a newly formed subsidiary whose sole purpose is to monetize the patents. This practice appears to be designed to protect Acacia's evaluation of the patents from typical discovery requests and forcing Acacia's target to issue subpoenas when the subsidiary

*See* Exs. D, E. Chalumeau exists only on paper. It has no employees or physical office. *See* Chalumeau Rule 30(b)(6) Tr. (Ex. F) at 210:1-15. [REDACTED] *Id.* at 14:3-15. Its day-to-day activities, which consist solely of monetizing the '885 patent, [REDACTED] *See* Depo. Tr. of Dooyong Lee (Ex. G) at 60:19-61:7, 62:12-21. Acacia [REDACTED] *Id.* at 65:5-21; 105:18-106:7.

**B. Chalumeau's Enforcement Activity and the RPX License Agreement**

Almost immediately after it was formed, Chalumeau began asserting the '885 patent in this Court. On June 28, 2011 and September 1, 2011, Chalumeau filed lawsuits against fifteen technology companies alleging infringement of the '885 patent. *See Chalumeau Power Systems, LLC v. Avaya, Inc. et al.*, C.A. No. 11-572-RGA (D. Del.) and *Chalumeau Power Systems, LLC v. D-Link Systems, Inc. et al.*, C.A. No. 11-771-RGA (D. Del.). Most of the defendants in those cases decided to settle Chalumeau's claims through RPX Corporation ("RPX"), a third-party patent aggregator. Generally speaking, RPX is in the business of acquiring patents and patent licensees for its "members," who join RPX for a fee.

RPX and Chalumeau negotiated a Patent License, License Option and Assignment Agreement that resolved the first *Chalumeau* litigations (the "RPX License"). *See generally* Ex. H. The RPX License was executed on September 30, 2011. In exchange for a license fee RPX paid to Chalumeau, the RPX License (1) [REDACTED]; (2) [REDACTED]; (3) [REDACTED]

---

refuses to produce any materials in the hands of its parent.



[redacted] and (4) [redacted]. *See* Ex. H, §§ 1.1, 1.2, 1.3. If exercised – and many were exercised in this case – the sublicenses granted by RPX are far reaching. Under the plain terms of the RPX License, the sublicenses extend [redacted] *Id.* at 2, § 1.2(c). The sublicense provisions in the RPX License [redacted]. *Id.*

### C. Chalumeau's Case Against Alcatel-Lucent

On November 29, 2011, Chalumeau sued Alcatel-Lucent and Allied Telesis. Like Chalumeau's other targets,[2] Allied Telesis quickly settled for [redacted]. Chalumeau sought to settle this case too, making Alcatel-Lucent an initial settlement demand of $800,000. But Alcatel-Lucent rejected that offer and chose to litigate the case on the merits.

From the start, Chalumeau took positions contrary to the law and the facts. Before responding to the Complaint, Alcatel-Lucent approached Chalumeau seeking its agreement to dismiss Alcatel-Lucent's French parent company—Alcatel Lucent S.A.—that was originally named as a defendant in the case. Alcatel-Lucent explained that the French parent was not responsible for, or in any way involved in, the development or sales of the accused products and that it conducts no business in the U.S. Rather, all U.S. sales were handled by the other two Alcatel-Lucent entities named in the Complaint.

Alcatel-Lucent and Acacia had encountered the same issue only months earlier in another

[2] Chalumeau entered into four other license agreements with defendants not included in the RPX License Agreement. [redacted]

case in this very Court where Lambda Optical Solutions, LLC ("Lambda"), another Acacia subsidiary, named Alcatel Lucent S.A. as a defendant. *See Lambda Optical Solutions v. Alcatel Lucent SA, et al.*, 10-487-RGA-CJB (D. Del.). On January 24, 2011—ten months before Chalumeau sued Alcatel-Lucent—Alcatel Lucent S.A. filed a motion to dismiss for lack of personal jurisdiction in the *Lambda* case. In its Response to that motion, Lambda indicated it would voluntarily dismiss Alcatel Lucent S.A. only if it received certain concessions from that entity. As a basis for insisting on those concessions, Lambda wrote: "All Lambda sought was to avoid its own position being worsened in the ***highly unlikely event*** that there turns out to be a basis for asserting the patent against Alcatel SA after all." Ex. I at 2 (emphasis added). Despite believing that it was ***highly unlikely*** that this Court had jurisdiction over Alcatel Lucent S.A. and after being informed Alcatel Lucent S.A. is a holding company, Chalumeau filed the Complaint in this case naming it as a defendant. Moreover, Chalumeau did so just over a month after Lambda stipulated to the dismissal of Alcatel Lucent S.A. *See* C.A. No. 10-487-RGA, D.I. 136. Knowing that its arguments were futile and that it was "highly unlikely" that it would uncover any facts to support its argument, Chalumeau sought and obtained jurisdictional discovery anyway. The issue was only resolved when the Court granted Alcatel-Lucent's motion to dismiss. D.I. 58.

In total, it cost Alcatel-Lucent approximately $90,000 in attorneys' fees to obtain the dismissal of an entity that Acacia knew was not a proper defendant. *See* Shiferman Decl. ¶ 6.

**D. Chalumeau's Infringement Theory**

Chalumeau alleged that Alcatel-Lucent's Enterprise switching products that comply with IEEE standards referred to as "Power over Ethernet" infringe claims 8 and 9 of the '885 patent. Chalumeau, however, was never able to articulate a coherent infringement theory. On October

31, 2012, Alcatel-Lucent made its production of core technical documents pursuant to paragraph 4(b) of the Court's Default Standard for Discovery which consisted of hardware and software specifications that described the composition and operation of Alcatel-Lucent's PoE switches, and importantly, identified all component chips and their suppliers. On December 17, 2012, Chalumeau served its preliminary infringement contentions alleging that nine different product families infringed claims 8 and 9 of the '885 patent. Ex. J. In its infringement contentions, Chalumeau did not cite to a single technical document produced by Alcatel-Lucent and failed to identify any corresponding structures that it contended satisfied the various functional limitations of claim 8. To the contrary, each claim chart for each set of products contained the identical textual allegations with superficial references to publicly available product literature.

## IV. THE COURT SHOULD FIND THIS CASE EXCEPTIONAL UNDER § 285 AND ALCATEL-LUCENT SHOULD BE AWARDED ITS ATTORNEYS' FEES

### A. Legal Standard

"A case may be deemed exceptional [under 35 U.S.C. § 285] when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions." *Kilopass*, 738 F.3d at 1308 (citing *Brooks Furniture Mfg., Inc. v. Dutailer Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005)). "Absent misconduct in the litigation or in securing the patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Id.* at 1309. The "objective prong is a single backwards-looking inquiry into the reasonableness of the claims in light of the full record." *See Highmark*, 687 F.3d at 1310-11. "To be objectively baseless, the patentee's assertions—whether manifested in its infringement allegations or its claim construction positions—'must be such that

no reasonable litigant could reasonably expect success on the merits.'" *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327 (Fed. Cir. 2013) (quoting *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH,* 524 F.3d 1254, 1260 (Fed. Cir. 2008)).

To establish subjective bad faith, a defendant does not need to prove that the plaintiff had actual knowledge that its claims are baseless. *See Kilopass,* 738 F.3d at 1310 ("[T]o the extent that the district court did require actual knowledge of objective baselessness, it erred."). No "smoking gun" is required for the court to find subjective bad faith; "a defendant need only prove reckless conduct to satisfy the subjective component of the § 285 analysis." *Id.* The court may infer bad faith "from circumstantial evidence thereof when a patentee pursues claims that are devoid of merit" or where "the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court...." *Id.* at 1311 (internal citation omitted). Moreover, the future of the Federal Circuit's requirement for objective baseless and subjective bad faith is in serious question. On October 1, 2013, the Supreme Court has granted certiorari in *Octane Fitness v. ICON Health & Fitness*, where it is considering:

> Does the Federal Circuit's promulgation of a rigid and exclusive two-part test for determining whether a case is "exceptional" under 35 U.S.C. § 285 improperly appropriate a district court's discretionary authority to award attorney fees to prevailing accused infringers in contravention of statutory intent and this Court's precedent, thereby raising the standard for accused infringers (but not patentees) to recoup fees and encouraging patent plaintiffs to bring spurious patent cases to cause competitive harm or coerce unwarranted settlements from defendants?

*See* No. 12-1184, *available at* http://www.supremecourt.gov/qp/12-01184qp.pdf. Oral argument in *Octane Fitness* is scheduled for February 26, 2014.

**B. Alcatel-Lucent is the Prevailing Party**

There can be no dispute that Alcatel-Lucent is the prevailing party in this case. Chalumeau's patent infringement claim against Alcatel-Lucent has been dismissed with prejudice at its own request. D.I. 153. "A defendant, who has obtained from a claimant a

voluntary dismissal with prejudice can be classified as a 'prevailing party.'" *Callaway Golf Go. v. Slazenger*, 384 F. Supp. 2d 735, 746 (D. Del. 2005). This Court's Local Rules similarly explain that the "defendant is the prevailing party upon a dismissal ... of the case without judgment for the plaintiff on the merits." D. Del. L.R. 54.1 (c).

### C. Chalumeau's Infringement Theory and Claim Construction Positions Was Frivolous and Vexatious.

Chalumeau's entire case against Alcatel-Lucent was baseless from its inception and rested on both objectively and subjectively unreasonable claim construction positions—most of which were readily and unequivocally rejected by this Court. In particular, Chalumeau's proposed constructions and corresponding infringement theory based on at least two limitations—"adapter of a first type" and "network hub"—were manifestly unreasonable. *See Eltech Sys. Corp. v. PPG Indus.*, 903 F.2d 805,810-11 (Fed. Cir. 1990).[3]

First, a central dispute in this case was whether Alcatel-Lucent's accused switches identify the presence of an "adapter of a first type" and then "continuously supply power to the adapter ... in response to the identified presence of said adapter." By way of background, it cannot be disputed that under the publicly available PoE standards, Ethernet switches do not distinguish "adapter of a first type" from any other "type" of adapter before supplying power. Accordingly, to sustain its infringement case against Alcatel-Lucent, Chalumeau took the untenable position that "adapter of a first type" simply meant "adapter of a particular type," which basically could include any adapter. Indeed, Chalumeau made that very argument to the Court at the *Markman* hearing when it argued "[i]nsofar as the claim is concerned, there is no difference" between the terms "adapter" and "adapter of a first type." The Court responded, "[t]hat can't be right." Hearing Tr. (Ex. B) at 95. It went on to state that:

---

[3] The Court need not reach or consider the merits of Alcatel-Lucent's non-infringement position

> [W]ell, that's why I'm interested in here, is getting a construction of an adapter of a first type that is a proper construction, because ***I think adapter of a particular type is clearly not a proper construction.***
>
> So if you want me to consider your construction as opposed to the defendants, which at least has a proffer-type construction, I don't know whether it's right or wrong, you need to come up with a better construction than adapter of a particular type.

Hearing Tr. (Ex. B) at 98-99 (emphasis added).[4]

Instead of relying on the specification—"the single best guide to the meaning of a disputed term"[5]—Chalumeau ignored it. As set forth in the Court's Order , the specification specifically defined each of "adapter of a first type," "adapter of a second type," and "adapter of a third type," and instructed that only an adapter of "first type" receives electrical power because adapters of a "second" and "third type" lack the circuitry required to request power. *See* D.I. 136 at 7. "Clearly then, an 'adapter of a first type' cannot be just an 'adapter of a particular type,' as that would include adapters of a 'second' and 'third' type, which do not receive power." *Id.* Chalumeau's construction also contradicted the specification because it would include both wireless and wired adapters. When asked "are you saying the adapter of a first type could include ethernet 10BASE-T, 100BASE-TX, 100BASE-T4 and Token Ring?" Chalumeau mischaracterized the patent arguing, "[t]hat's what the patents says, your Honor." Hearing Tr. (Ex. B) at 102. To the contrary, the patent states:

> More particular, the network hub ... of the present invention provide[s] the electrical power to the detected device when the presence of the detected device is confirmed, and ***does not provide electrical power to the connector and the twisted-pair cable when either adapters of another type (such as Ethernet 10Base-T, 100Base-TX 100Base-T4, and Token Ring adapters) are connected*** or when no adapter is connected.

---

for it to find that Chalumeau's proposed construction was manifestly unreasonable.

[4] To which, Chalumeau's lawyer argued for the very first time "[w]ell, it [adding the phrase 'of a first type'] could have been a drafting error, your Honor." *Id.* at 96. This specious argument was quickly abandoned during the hearing. *Id.* at 97.

[5] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc).

'885 Patent (D.I. 1), 4:50-58 (emphasis added); *see also id.* at 5:56-60. As the Court noted, "the specification ***makes clear*** that powering wired adapters was not envisioned" and that "[t]he specification ***makes clear*** that this adapter could be another wireless adapter, but ***clearly*** does not contemplate a wired adapter, and indeed ***teaches away*** from powering a wired adapter." D.I. 136 at 7 (emphasis added). And, "[b]ased upon the specification it is ***clear*** that the invention only provides electrical power for wireless protocols." *Id.* at 9 (emphasis added). Chalumeau's proposed construction was plainly inconsistent with the specification's clear disclosure.

Second, Chalumeau's proposed construction for "network hub" and "user interface connectors" was equally flawed. D.I. 136 at 4. Again, the motive behind Chalumeau's proposed construction is apparent. Alcatel-Lucent's accused products are not "hubs," nor does Alcatel-Lucent make, use, sell, or offer for sale "user interface connectors." So Chalumeau needed to rewrite the claim, and its proposed construction (1) effectively read out the claim's requirement of a "network hub" (as distinguished from a switch, router, workstation, bridge, etc.), and (2) unabashedly sought to change the plain language of claim 8 from requiring the network hub to be "***coupled to*** the plurality of user interface connectors" to the network hub "***having a*** plurality of user interface connectors." The Court rejected this argument: "it is ***clear*** that the user interface connectors themselves are distinct entities separate from the network hub." D.I. 136 at 3 (emphasis added). *See Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1369 (Fed. Cir. 2012) ("This is a clear instance where no objectively reasonable litigant, relying on the single sentence in the specification to support its position, would believe its claim construction could succeed…").[6] Perhaps even more troubling, however, is that in order to advance its proposed construction, Chalumeau again misrepresented the specification. It argued "[t]he '885

---

[6] Chalumeau could not even point to a single sentence in the specification that supported its construction. Rather, it relied exclusively on what the Court recognized to be "apparent typos."

Patent teaches that a network hub has a plurality of ***user interface*** connectors." D.I. 93 at 18 (emphasis added). Yet, as the Court noted in its Memorandum Opinion, "the portion of the specification which Plaintiff cites to for the inclusion of 'user interface connectors' in the network hub refers to a ***different component***, 'hub user connectors,' which are referenced ***with a different number*** (208) than user interface connectors (204)." D.I. 136. at 5 (emphasis added). The rest of Chalumeau's proposed construction of "network hub" fared no better. It simply repackaged other functional limitations from elsewhere in the claim, and was rejected by the Court because "Plaintiff's proposed construction is really no construction at all...." *Id.*

In similar circumstances, the Federal Circuit has had no difficulty finding that that frivolous claim construction positions that are contradicted by the intrinsic evidence support a finding of ***both*** objective baselessness ***and*** subjective bad faith. "Where, as here, the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence." *Eltech,* 903 F.2d at 810-11; *see also Kilopass*, 738 F.3d at 1312 ("*Brooks Furniture* thus did nothing to discourage courts from drawing an inference of bad faith from circumstantial evidence thereof ***when a patentee pursues claims that are devoid of merit.***") (emphasis added). In fact, in a series of recent cases, the Federal Circuit has upheld determinations of exceptionalness where, like here, the intrinsic evidence "clearly refutes" the plaintiff's proposed construction. In *Taurus IP*, the Federal Circuit found that the plaintiff's proposed construction of the term "user," "f[e]ll below the threshold required to avoid a finding of objective baselessness" because the plaintiff "proposed that 'user' either not be construed at all, or effectively not construed, as 'a person who uses the claimed computer system.'" *Taurus IP*, 726 F.3d at 1327. In *MarcTec,* the Court "agree[d] with the district court that MarcTec's

*See* D.I. 136 at 3.

proposed construction, which ignored the entirety of the specification and the prosecution history, and thus was unsupported by the intrinsic record, was frivolous and supports a finding of bad faith." *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 918 (Fed. Cir. 2012). And, in *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1326 (Fed. Cir. 2012), the Court held that "because the written description clearly refutes Eon-Net's claim construction, the district court did not clearly err in finding that Eon-Net pursued objectively baseless infringement claims."[7]

### D. Chalumeau's Subjective Bad Faith and Litigation Misconduct Makes This Case Exceptional

There is additional evidence of subjective bad faith in this case beyond Chalumeau's frivolous claim construction positions and infringement allegations. Chalumeau had nothing to lose in bringing this case against Alcatel-Lucent. [REDACTED] . *See* Ex. H § 1.3. Moreover, as a non-practicing entity, formed only weeks before these lawsuits were filed, Chalumeau "was generally immune to counterclaims for patent infringement, antitrust, or unfair competition because it did not engage in business activities that would potentially give rise to those claims." *See Eon-Net*, 653 F.3d at 1327.

With that background, there are no shortage of examples of vexations and unduly burdensome litigation tactics that, taken together, warrant an inference of bad faith. *See Kilopass,* 738 F.3d at 1310-11 ("[I]n considering a party's subjective state of mind [under § 285], [the court is] to take into account the totality of the circumstances.") (quotations omitted). Chalumeau attempted to keep its costs down by engaging in a minimalistic prosecution of its

---

[7] This case is not like *iLOR, LLC v. Google Inc.*, 631 F.3d 1372, 1378 (Fed. Cir. 2011), where the Federal Circuit found that the patentee's claim construction position had some "objective merit." In that case, the Federal Circuit found that the "claim language does not preclude the patentee's construction" and that "the specification [does not] clearly refute the patentee's construction." *Id.* In contrast, here, both of Chalumeau's constructions were clear rewrites of

case against Alcatel-Lucent. Its preliminary infringement contentions were formulaic and cited to ***none*** of the tens of thousands of pages of documents that Alcatel-Lucent produced as part of its core technical document production under Paragraph 4(b) of the Default Standard for Discovery. Indeed, Chalumeau's preliminary infringement contentions, served well over one year after it filed suit, failed to even meet the low threshold demonstrating that it had conducted a good faith infringement analysis. *See Shared Memory Graphics, LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) ("[B]y compelling the plaintiff to crystallize its theory of infringement and flesh out all the facts that it has to support its theories, [infringement contentions] can lay the groundwork for a subsequent Rule 11 [issue] by exposing early on an inadequate pre-filing inquiry."); *Micromesh Tech. Corp. v. Am. Recreation Prods., Inc.*, No. C-06-6030, 2007 WL 2501783 *6 (N.D. Cal. Aug. 30, 2007) (in a awarding fees against another Acacia entity due to "fill in the blank" claim charts, "simply placing words on a document does not constitute good-faith litigant practice unless the plaintiff's assertion is supported by a minimally competent investigation and analysis.").

For example, before it took the unsupported position that "adapter of a first type" meant "adapter of a particular type," Chalumeau contended in its initial infringement contentions that "adapter of a first type" was a commonplace ***plug*** at the end of an Ethernet cable. *See, e.g.,* Ex. J at Exhibit A, p. 4 (alleging that an "adapter of a first type" was an "RJ-45 adapter"). Simply put, no reasonable person reading the specification of the '885 patent would conclude that the "adapter of a first type" was a plug, and it is unconscionable (let alone "grossly unjust") that a patentee can trigger million-dollar patent litigations on such an obviously wrong infringement theory. At a minimum, Chalumeau's failure to articulate a plausible infringement theory a ***year*** after it filed its complaint and after Alcatel-Lucent had produced its core technical documents is

---

the plain language of the claim and inconsistent with the specification.

inexcusable and supports an inference of bad faith. Moreover, despite Alcatel-Lucent's efforts, Chalumeau never answered or provided supplemental responses to many of Alcatel-Lucent's interrogatories directed towards core issues such as infringement ( No. 1), invalidity (No. 6), and damages (Nos. 11, 12), even though fact discovery closed in November.[8] *See* Shiferman Decl. ¶ 25; Ex. K. Indeed, Chalumeau had no technical experts even looking at Alcatel-Lucent's confidential document productions (or non-infringement contentions) during fact discovery, as it waited until ***November 8, 2013*** to disclose any experts under the protective order. *See* Ex. L.

At the same time Chalumeau was doing as little as possible in this case, it sought to drive up Alcatel-Lucent's costs as much as possible. As a non-practicing entity, Chalumeau "had the ability to impose disproportionate discovery costs on [Alcatel-Lucent]." *See Eon-Net*, 653 F.3d at 1327. Alcatel-Lucent produced over 32,000 documents totaling over 1.1 million pages in response to Chalumeau's sweeping document requests, costing tens of thousands of dollars. In sharp contrast, Chalumeau produced less than 600 documents totaling just over 10,000 pages. Moreover, Chalumeau used its corporate formalities to frustrate Alcatel-Lucent's discovery efforts. For example, when Alcatel-Lucent sought binding Rule 30(b)(6) testimony on core issues concerning Acacia's acquisition of the '885 patent, due diligence and valuation of the '885 patent, and enforcement of the '885 patent, Chalumeau's witness (an Acacia employee) was wholly unprepared. *See, e.g.,* Lucas Dep. (Ex. F) at 18-22, 72, 76-78, 80, 83, 99-100, 176-186, 243-246, 295, 320-321, 328-330. At the deposition, Chalumeau's lawyer took the position that Alcatel-Lucent's Rule 30(b)(6) deposition topics directed towards, e.g., Acacia's acquisition of the '885 patent were "outside the scope" of the deposition because, e.g., "that's not a topic that

---

[8] It is worth nothing that Chalumeau's failure to supplement Interrogatory No. 12, which sought its contention as to whether there was an industry royalty rate, was particularly inexcusable given the Court's instruction during an April 26, 2013 conference that Chalumeau "ought to investigat[e] into it and see if you cannot give them answer" and that "I think that is a contention

he's being presented on here today. He's here on behalf of Chalumeau. This is an Acacia Clarinet agreement." *Id.* at 73. At one point, counsel threatened that "I warned you early on, you keep going down this Acacia path. He's here on behalf of Chalumeau. I'm seriously contemplating stopping this deposition and calling the Court." *Id.* at 97. Of course, that is not the law. *See* Fed. R. Civ. P. 30(b)(6) (requiring that an entity designate a witness to testify about "information known or ***reasonably available*** to the organization.") (emphasis added); *see also Sanofi-Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 394, 395 (D. N.J. 2011) ("The 'or reasonably available' language of Rule 30(b)(6) clearly contemplates information beyond the present domain of the noticed entity"; "corporate form without more does not end the inquiry."). Even worse, however, when Alcatel-Lucent actually deposed Acacia under Rule 30(b)(6), Acacia's witness was equally unprepared, requiring three additional individual depositions of Acacia employees and former employees. *See, e.g.*, Ex. M at 42-43, 46, 52, 67, 73, 81, 97, 96.

Finally, Chalumeau engaged in harassing and vexatious motion practice. It forced Alcatel-Lucent to brief and provide expedited discovery on the issue of whether this Court had personal jurisdiction over Alcatel-Lucent's French parent company, Alcatel Lucent S.A., even though just over a month before the suit was filed, another Acacia subsidiary agreed to dismiss Alcatel Lucent S.A. in another case with no apparent change in circumstance between the two cases. It noticed and then refused to postpone or withdraw the deposition of Alcatel-Lucent's most senior executive, Robert Vrij, even though the case law disfavoring such "apex" depositions was crystal clear. Third, Chalumeau also moved to compel a witness on Alcatel-Lucent's knowledge of the '885 patent and then cancelled that deposition. Finally, Chalumeau opposed Alcatel-Lucent's motion to amend its answer to add a license defense based on discovery produced by RPX. Chalumeau's opposition was unreasonable. Alcatel-Lucent's

---

that they [Chalumeau] ought to have an answer to." 4/26/13 Hrg. Tr. at 30.

motion was timely and fact discovery was still open. Indeed, despite its complaints of prejudice because it had previously taken three of its permitted ten depositions, Chalumeau never took the requested deposition that the Court had allowed it to take. *See* Oral Order (Nov. 5, 2013). Alcatel-Lucent offered three dates for a Rule 30(b)(6) directed towards Alcatel-Lucent's license defense. Each time Chalumeau rejected the date, finally admitting in January that it really did not need the deposition which served as the only basis for its opposition to the Motion to Amend.

Indeed, Chalumeau's opposition to Alcatel-Lucent's timely-raised license defense is particularly inexcusable as another Acacia entity earlier faced a similar issue in *Summit Data Systems, LLC v. EMC Corp. et al.*, C.A. No. 10-749 (GMS) (D. Del.). According to the papers filed by NetApp, the similarities between the two cases are undeniable. *See* C.A. No. 10-749, D.I. 240. In *Summit*, Acacia licensed the asserted patents to 43 major computer companies through RPX. Here, the [REDACTED]. In *Summit*, according to NetApp's papers, the RPX license extended to every computer system that includes licensed software, which included for example, Microsoft software. Here, [REDACTED] In *Summit*, the plaintiff premised its infringement contentions on the use of features provided by an RPX licensee. Here, Chalumeau premised its infringement contentions on functionality provided by RPX licensees that manufacture component chips for Alcatel-Lucent. These parallels occurring at virtually the same time reflect a troubling pattern by Acacia (carried out through its subsidiaries) of granting broad licenses to RPX while retaining the right [REDACTED] *See PSC Inc. v. Symbol Techs., Inc.*, 26 F. Supp. 2d 505, 511 (W.D.N.Y. 1998) (finding attempts to collect double royalties constitute patent misuse). Indeed, NetApp

communicated to Acacia that it was improperly attempting to double dip by collecting royalties on already licensed products on October 10, 2012. *See* C.A. No. 10-749, D.I. 244 at 15. That was two months before Chalumeau (while in possession of information regarding Alcatel-Lucent's suppliers) submitted its infringement contentions in this case. At a minimum, after Acacia was made aware of the RPX issue in *Summit* and knowing that it had entered into an equally broad license agreement with RPX for the '885 patent, it was reckless of Chalumeau to fail to investigate and to maintain this suit against Alcatel-Lucent. Of course, Alcatel-Lucent had no way of knowing about the scope of the RPX License at the time because it would not be produced for another five months, in March 2013. Even when presented with evidence of the license issue by Alcatel-Lucent in this case, Chalumeau continued to press its alleged infringement claim extending the litigation four more months.

## V. ALCATEL-LUCENT'S ATTORNEYS FEES AND COSTS ARE REASONABLE AND SHOULD BE AWARDED.

This Court should exercise its discretion and award Alcatel-Lucent the attorneys' fees it was forced to incur defending itself against Chalumeau's baseless claims of infringement. "[I]t is clear that the aim of § 285 is to compensate a defendant for attorneys' fees it should not have been forced to incur." *Kilopass*, 738 F.3d at 1313. In total, Alcatel-Lucent spent approximately $1,078,000 in attorneys' fees and $14,000 in expert costs. *See* Shiferman Decl. ¶¶ 4-5.

"The methodology of assessing a reasonable award under 35 U.S.C. § 285 is within the discretion of the district court." *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988) *(citing Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983)). Where a prevailing party "has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation." *Id.* at 755 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (internal quotations omitted)). Alcatel-

Lucent therefore requests that the Court enter an order requiring Chalumeau to reimburse it for its reasonable attorney's fees in the amount of approximately $1,078,000, plus those fees incurred and paid by Alcatel-Lucent through the conclusion of this motion. *See* Shiferman Decl. ¶ 4. Because Chalumeau's litigation was unfounded from the start and through its litigation conduct Chalumeau forced Alcatel-Lucent to incur additional expense, the full scope of Alcatel-Lucent's fees was necessarily and reasonably incurred in the defense of this case and this case was handled with appropriate diligence and concern for costs and efficiencies. The rates charged by attorneys from Goodwin Procter for services are comparable to those charged by other firms for comparable work by attorneys of similar experience, reputation, and skill. *See* ¶¶ 2-3, 8-15.

Further, Alcatel-Lucent incurred approximately $14,000 in expert costs. *Id.* ¶ 5. Such costs may be awarded pursuant to the Court's inherent authority where there has been an abuse of the judicial process. *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008). In light of Chalumeau's conduct, the award of these costs is appropriate to fully compensate Alcatel-Lucent for the undue expense of litigating a baseless and vexatious case.

## VI. CONCLUSION

For the foregoing reasons, Alcatel-Lucent respectfully requests that the Court award the full amount of fees it incurred in this litigation, totaling approximately $1,078,000 in attorneys' fees and $14,000 in expert expenses [9]

---

[9] Consistent with the procedures set forth in the Federal Rules of Civil Procedure, Alcatel-Lucent will submit any additional supporting evidence the Court requests in order to calculate a precise dollar amount. *See* Fed. R. Civ. P. 54(d), 1993Advisory Committee Notes. "The rule does not require that the motion be supported at the time of filing with the evidentiary material bearing on the fees. This material must of course be submitted in due course, according to such schedule as the court may direct in light of the circumstances of the case. What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees, and the amount of such fees (or a fair estimate)."

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Jack B. Blumenfeld

Jack B. Blumenfeld (#1014)
Paul Saindon (#5110)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
psaindon@mnat.com

*Attorneys for Alcatel-Lucent USA Inc. and Alcatel-Lucent Holdings Inc.*

OF COUNSEL:

J. Anthony Downs
Lana S. Shiferman
Robert Frederickson III
GOODWIN PROCTER LLP
53 State Street
Boston, MA 02109
(617) 570-1000

February 14, 2014

8003533.1

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 14, 2014, upon the following in the manner indicated:

Brian E. Farnan, Esquire
Rosemary J. Piergiovanni, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801

*VIA ELECTRONIC MAIL*

James A. Jorgensen, Esquire
Michael E. Lee, Esquire
Joshua B. Long, Esquire
LEE, JORGENSEN, PYLE & KEWALRAMANI, P.C.
1800 Augusta Drive, Suite 250
Houston, TX 77057

*VIA ELECTRONIC MAIL*

Hemant H. Kewalramani, Esquire
LEE, JORGENSEN, PYLE & KEWALRAMANI, P.C.
440 West 1st Street, Suite 205
Tustin, CA 92780

*VIA ELECTRONIC MAIL*

Jack B. Blumenfeld (#1014)