IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **CHALUMEAU POWER SYSTEMS LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**ALCATEL-LUCENT USA INC.,** and **ALCATEL-LUCENT HOLDINGS INC.,**<br><br>Defendants. | **FILED UNDER SEAL**<br><br>Civil Action No. 11-cv-01175-RGA<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF CHALUMEAU POWER SYSTEMS LLC'S
OBJECTIONS TO DEFENDANTS' BILL OF COSTS**

### I. INTRODUCTION

Plaintiff hereby files these Objections to Defendants Alcatel-Lucent USA Inc. and Alcatel-Lucent Holdings Inc.'s (collectively "ALU") Bill of Costs (D.I. No. 156) pursuant to Local Rule 54.1(a)(3). ALU's Bill of Costs is flawed for a number of reasons as explained below.

### II. STATEMENT OF FACTS

This case was brought against ALU and Alcatel-Lucent S.A. (the French parent company) on November 29, 2011 for infringement of U.S. Patent No. 5,991,885 (the "'885 Patent"). Prior to the original complaint being filed, Chalumeau entered into a license agreement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) on September 30, 2011 as part of a settlement of earlier litigation involving the '885 Patent.

On January 23, 2012, Alcatel-Lucent S.A. filed a motion to dismiss for lack of personal jurisdiction (D.I. 13). On September 12, 2012, the Court granted Alcatel-Lucent S.A.'s motion to dismiss, leaving only ALU in the case (D.I. 58).

On September 30, 2013, four days after Chalumeau deposed ALU's technical witnesses, ALU asked if Chalumeau would oppose its effort to amend its answer to include a license defense based on ████████████ Chalumeau opposed as ALU had been aware of ████ ████████ since March 6, 2013. On November 5, 2013, the Court granted ALU's motion to amend (D.I. 140).

On November 4, 2013, the Court entered its *Markman* Order (D.I. 139) which Chalumeau later reviewed with its technical expert. Chalumeau maintained that ALU's products infringed the '885 Patent in light of the claim constructions in the *Markman* Order.

After the Court granted ALU's motion to amend its answer, ALU began producing documentation relating to components purportedly supplied by ████████████ Specifically, ALU produced 663 pages of documents on November 12, 2013 and 8,371 pages of documents on November 15, 2013. Chalumeau reviewed these documents with its technical expert. While Chalumeau believed that its case still had merit in light of the opinions of its technical expert and language in the ████████ ████████████████████████, the economics of the case changed causing Chalumeau to seek a voluntary dismissal. The Court granted the voluntary dismissal with prejudice on January 31, 2014 (D.I. 153).

### III. ARGUMENTS AND AUTHORITIES

#### A. Legal Standards.

Fed. R. Civ. P. 54(d) provides, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs-other than attorney's fees-should be allowed to the prevailing party."

This court's Local Rule 54.1(c) provides a defendant is the prevailing party "upon a dismissal or summary judgment or other termination of the case without judgment for the plaintiff on the merits." L.R. 54.1(c). Furthermore, 28 U.S.C. § 1920 enumerates taxable costs.[1]

"In reviewing a request for costs under Rule 54(d) and 28 U.S.C. § 1920, the court must apply the law of the regional circuit, in this matter the Third Circuit, and not the Federal Circuit." *United Access Techs., LLC v. EarthLink, Inc.*, 2012 U.S. Dist. LEXIS 82478, *4-5 (D. Del. June 14, 2012). However, Rule 54(d) "does not give a winning litigant *carte blanche* to recover all enumerated costs." *See Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987) (holding that Rule 54(d) does not give a district judge "discretion to tax whatever costs may seem appropriate"); *Vardon Golf Co. v. Karsten Mfg. Corp.*, 2003 WL 1720066, at *7 (N.D. Ill. March 31, 2003); *see also Warner-Lambert Co. v. Apotex Corp.*, 2003 WL 21754948, at *8 (N.D. Ill. July 28, 2003) ("The rule does not give courts carte blanche to award any costs claimed, however.").

### B. ALU Seeks $24,216.47 In Unauthorized Deposition Costs.

ALU seeks alleged "deposition costs," including costs associated with deposing Margaret Gelsi, Bryan Dietz, Brad Magnani, Michelle Goodwin, Arthur Roberts, Gus Vasilakis, Eric Lucas, Erik Ahroon, Dooyong Lee, Wen Chang, Fang Yu, Bradley Botsch and Clayton Haynes (D.I. 157, Ex. 2). ALU's attempted inclusion of these deposition costs is misplaced. In fact, ALU only cites to non-controlling authority for the proposition that the deposition costs are taxable (D.I. 156 at 4).

Local Rule 54.1(b)(3) states the following:

---

[1] Taxable costs include: (1) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (2) fees and disbursements for printing and witnesses; (3) fees for exemplification and the costs for copies of any materials where the copies are necessarily obtained for use in the case; (4) docket fees; and (6) compensation of court appointed experts.

> Deposition Costs. The reporter's reasonable charge for the original and one copy of a deposition and the reasonable cost of taking a deposition electronically or magnetically recorded **are taxable only where a substantial portion of the deposition is used in the resolution of a material issue in the case.** Charges for counsel's copies and the expenses of counsel in attending depositions are not taxable, regardless of which party took the deposition. Notary fees incurred in connection with taking depositions are taxable

Local Rule 54.1(b)(3) (emphasis added). ALU fails to allege (as it has no basis) that any of the depositions are taxable because "a substantial portion of the deposition is used in resolution of a material issue in the case" as required by Local Rule 54.1(b)(3). "The standard of 54.1(b)(3) focuses on the actual use of a substantial portion of the deposition to resolve a material issue in the case; it does not focus on whether the parties' attorneys use the depositions or subjectively view the depositions as important or unimportant." *Honeywell Int'l, Inc. v. Hamilton Sunstrand Corp.*, 2009 U.S. Dist. LEXIS 93395 at *5 (D. Del. Sept. 30, 2009) (denying deposition costs where portions of depositions were used in the preparation and cross-examination of witnesses who testified at trial). As in *Honeywell,* ALU fails to point to *any* evidence where a substantial portion of the depositions were actually used to resolve a material issue in the case. Accordingly, ALU's request for "deposition costs" should be denied.

### C. ALU Seeks $1,753.55 In Unauthorized Transcript Costs.

ALU seeks alleged "transcript costs," including costs associated with several hearings before the Court (D.I. 157, Ex. 3). ALU's attempted inclusion of these transcript costs is misplaced. ALU fails to cite to any case law in support of its untenable position.

Local Rule 54.1(b)(2) states:

> Transcripts Fees. The costs of the originals of a trial transcript, a daily transcript and of a transcript of matters prior or subsequent to trial, furnished to the Court, **are taxable when requested by the Court or prepared pursuant to stipulation.** Mere acceptance by the Court does not constitute a request. Copies of transcripts for counsel's own use are not taxable.

Local Rule 54.1(b)(2) (emphasis added). ALU's only argument in support of its request is that "[t]hese transcripts were used by the parties in briefing before this Court and in establishing case strategy." (D.I. 156 at 5). However, ALU offers no case law that transcript costs are recoverable in such circumstances. Indeed, Local Rule 54.1(b)(2) clearly states that transcript fees "are taxable when requested by the Court or prepared pursuant to stipulation." ALU fails to cite *any* evidence that either the Court requested transcripts or that they were prepared pursuant to stipulation. In fact, as far as Chalumeau is aware, the Court never requested transcripts in this case, and the record is plain that the parties never prepared any stipulations with respect to transcript costs. Accordingly, ALU's request for "transcript costs" should be denied.

### D. ALU Seeks $280.00 In Unauthorized Witness Fees.

ALU seeks alleged "witness fees" of $40 per witness for seven fact witnesses[2] that ALU deposed (D.I. 157, Ex. 4). ALU cites to 28 U.S.C. § 1821(c)(1) and Local Rule 54.1(b)(4), stating that the "costs for the expenses of trial witnesses are taxable" which include "the statutory witness fee of $40.00 per day of attendance." (D.I. 156 at 5).

ALU's reliance on Local Rule 54.1(b)(4) and 28 U.S.C. § 1821(c)(1) is misplaced. 28 U.S.C. § 1821(c)(1) states "A witness shall be paid an attendance fee of $40 per day for each day's attendance." Here, ALU seeks to recover witness fees for Plaintiff's own witnesses. Plaintiff submits that it is incorrect for ALU to seek to recover witness fees for Plaintiff's witnesses and not for its own witnesses. Accordingly, ALU's request for "witness fees" should be denied.

---

[2] Each of the seven fact witnesses is or was formerly associated with Chalumeau Power Systems, LLC and/or the patent-in-suit, not ALU.

### E. ALU Seeks $564.09 In Unauthorized Printing And Copying Costs.

ALU seeks alleged "printing and copying costs" of $564.09 (D.I. 157, Ex. 5). ALU cites to 28 U.S.C. § 1920(4) and Local Rule 54.1(b)(5) without pointing to any evidence as to why these costs should be allowed. (D.I. 156 at 6). In fact, ALU merely parrots the language of its cited authority without providing any analysis to support the recovery of these costs.

In *United Access*, the court elaborated on the requirements of Local Rule 54.1(b)(5).

> "Determining if copying and printing expenses are recoverable, is analyzed under the framework of § 1920(4), where the '[c]ourt looks to whether the expenses are reasonable, necessary to the prosecution of the litigation, and adequately documented.' **The relevant inquiry is whether the documents were necessarily obtained for use in the case**. A court is free to deny the request for such costs when it finds no documentation, or the documentation is insufficient. The burden rests with [ALU], as the moving party, to prove entitlement to reimbursement.
>
> Although *Steiner* cited herein was decided before the promulgation of LR 54.1(b), this court continues to rely on and has frequently cited this case since the implementation of the Delaware Local Rules in 1995. These cases confirm that if the moving party adequately documents the expenses by showing they are reasonable and were necessarily obtained for use in the case, then the expenses are taxable by the expressed statutory authority under 28 U.S.C. § 1920(4)."

*United Access Techs.*, 2012 U.S. Dist. LEXIS 82478, at *34-35 (citations omitted; emphasis added). Here, ALU completely fails to give any reason why the deposition exhibits cited in D.I. 157, Ex. 5 were "necessarily obtained for use in this case." "The Local Rules draw a clear distinction between costs relating to exhibits admitted at trial or required to be presented, and those that are prepared for counsel's own use or other reasons." *Honeywell Int'l*, 2009 U.S. Dist. LEXIS 93395 at *10.

ALU fails to meet its burden to prove that it is entitled to reimbursement as it has failed to give *any* reason why the deposition exhibits were "necessarily obtained for use in this case." Accordingly, ALU's request for "printing and copying fees" should be denied.

**F. ALU Seeks $41,290.17 In Unauthorized Electronic Discovery Costs.**

ALU seeks alleged "electronic discovery costs," including costs associated with "the creation and maintenance of an electronic database. (D.I. 156 at 7) (D.I. 157, Ex. 6). ALU's attempted inclusion of these electronic discovery costs is misplaced and the total amount should be amended.

ALU only cites to one case in the Third Circuit that addresses electronic discovery costs where the court awarded collection and imaging costs (D.I. 156 at 7 (citing *In re Aspartame Antitrust Litig.*, 817 F. Supp. 2d 608, 615 (E.D. Pa. 2011)). However, the Third Circuit recently addressed the issue of electronic discovery costs. In *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, the Third Circuit addressed the issue of "whether all charges imposed by electronic discovery vendors to assist in the collection, processing, and production of electronically stored information ("ESI") are taxable against a losing party as '[f]ees for exemplification [or] the costs of making copies of any materials where the copies are necessarily obtained for use in the case.' 28 U.S.C. § 1920(4)." 674 F.3d 158, 159 (3d Cir. 2012).

In *Race Tires*, the Third Circuit held that "only the scanning of hard copy documents, the conversion of native files to TIFF, and the transfer of VHS tapes to DVD involved 'copying,' and that the costs attributable to only those activities are recoverable under § 1920(4)'s allowance for the 'costs of making copies of any materials.'" *Id.* at 171. Here, ALU attempts to lump together non-copying activities from their vendor which include "document processing," "image branding," "OCR" and "native production." (D.I. 157, Ex. 6). These activities are outside of the scope of § 1920(4)'s allowance as interpreted by the court in *Race Tires*.

7

Numerous courts have elaborated on the *Race Tires* decision as it relates to § 1920(4). In *Warner Chilcott Labs. Ir. Ltd. v. Impax Labs., Inc.*, the Court summarized some of those cases as follows:

> In a very recent case, in which the court denied the $267,540 cost of storing electronically stored information ("ESI"), in reliance upon *Race Tires*, it stated, "[s]imply put, 'storing documents' and 'copying documents' are two different things: the latter is compensable, and the former is not." *Hallmark Cards, Inc. v. Monitor Clipper Partners*, LLC, No. 08-0840—CV—W—ODS, 2013 U.S. Dist. LEXIS 38162, 2013 WL 1155245, at *1 (W.D. Mo. Mar. 20, 2013). Like the *Race Tires* court, which harkened back to the pre-digital era, the court reasoned, '[i]f one were to analogize to a non-ESI situation, the statute would not allow a prevailing party to recover for renting space to store copies.' 2013 U.S. Dist. LEXIS 38162, [WL] at n.3.
>
> Similarly, in *Abbott Point of Care, Inc. v. Epocal, Inc.*, the court described *Race Tires* as 'a thorough, reasonable, and persuasive interpretation' of § 1920, and denied the $340,498 cost of maintaining an electronic discovery database, noting, '[s]ince . . . Race Tires America. . . almost all district courts considering the issue, . . . have held that the costs of creating and maintaining an electronic discovery database are not recoverable under § 1920 except insofar as the costs involve scanning documents or converting documents to an agreed-upon format, such as tagged image file format ('TIFF').' Civ. A. No. CV-08-S-543-NE, 2012 U.S. Dist. LEXIS 159042, 2012 WL 7810970, at *2-4 (N.D. Ala. Nov. 5, 2012), citing cases.
>
> Likewise, in *Amana Society, Inc. v. Excel Eng'g, Inc.*, the court disallowed the costs of uploading documents to a litigation-support software database, Bates match, OCR and document utilization on the basis of the Race Tires decision. No. 10-CV-168-LRR, 2013 U.S. Dist. LEXIS 14583, 2013 WL 427394, at *5-7 (N.D. Iowa Feb. 4, 2013). The court allowed only the isolated costs of converting native documents to TIFF, scanning electronic documents and making copies of documents on discs.

2013 U.S. Dist. LEXIS 167458, at *30-32 (D.N.J. Apr. 18, 2013). As in *Race Tires*, the only electronic discovery costs provided by ALU that should be taxable are the costs associated with converting native documents to TIFF. These costs can be extracted from the other non-copying costs in ALU's invoices.

ALU's invoices show three separate charges for the conversion of native files to TIFF format (D.I. 157, Ex. 6): (1) Invoice No. 002182 on April 30, 2013 shows a charge of $12,707.64 for conversion of native files to TIFF; (2) Invoice No. 003053 on August 31, 2013 shows a charge of $159.24 for conversion of native files to TIFF; and (3) Invoice No. 003698 on November 30, 2013 shows a charge of $219.72 for conversion of native files to TIFF.

Only these three charges should be taxable as electronic discovery costs. The three charges total $13,086.60. Accordingly, ALU's request for costs of $41,290.17 should be reduced to $13,086.60.

## IV. CONCLUSION

For the reasons stated above, ALU's requests for costs of depositions costs, transcript costs, witness fees and printing and copying costs should be denied. ALU's request for electronic discovery costs should be reduced to $13,086.60.

Respectfully submitted,

**FARNAN LLP**

/s/ Rosemary J. Piergiovanni
Brian E. Farnan (Bar No. 4089)
Rosemary J. Piergiovanni (Bar No. 3655)
919 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
rpiergiovanni@farnanlaw.com

James A. Jorgensen (admitted *pro hac vice*)
Michael E. Lee (admitted *pro hac vice*)
Joshua B. Long (admitted *pro hac vice*)
**LEE, JORGENSEN, PYLE & KEWALRAMANI, P.C.**
1800 Augusta Drive, Suite 250

Houston, Texas 77057
Telephone: (832) 431-4060
Facsimile: (713) 568-9994
jjorgensen@ljpklaw.com
mlee@ljpklaw.com
jlong@ljpklaw.com

**ATTORNEYS FOR CHALUMEAU POWER SYSTEMS LLC**