IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHALUMEAU POWER SYSTEMS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 11-1175 (RGA) |
| | ) | |
| ALCATEL-LUCENT, ALCATEL-LUCENT USA INC. and ALCATEL-LUCENT HOLDINGS INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**ALCATEL-LUCENT'S REPLY BRIEF IN SUPPORT
OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Paul Saindon (#5110)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
psaindon@mnat.com

*Attorneys for Alcatel-Lucent USA Inc. and
Alcatel-Lucent Holdings Inc.*

OF COUNSEL:

J. Anthony Downs
Lana S. Shiferman
Robert Frederickson III
GOODWIN PROCTER LLP
53 State Street
Boston, MA 02109
(617) 570-1000

March 14, 2014 - Original Filing Date
March 24, 2014 - Redacted Filing Date

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

I. CHALUMEAU MAKES NO EFFORT TO DEFEND THE REASONABLENESS OF ITS CLAIM CONSTRUCTION POSITIONS ........................ 2

II. THERE IS CLEAR AND CONVINCING EVIDENCE OF SUBJECTIVE BAD FAITH .................................................................................................................................. 3

    A. Chalumeau Did Not Seriously Prosecute Its Case During Fact Discovery ............. 4

    B. Chalumeau's Vexatious Motion Practice Is Further Evidence of its Bad Faith ........................................................................................................................ 7

    C. Chalumeau's Decision to Seek Voluntary Dismissal Does Not Cure Its Litigation Misconduct or Make its Claim Construction Positions Reasonable. ................................................................................................................ 8

III. CHALUMEAU'S DISPUTE WITH THE AMOUNT OF FEES IS PREMATURE ........ 10

## TABLE OF AUTHORITIES

**CASES**

*Alldread v. City of Grenada*,
 988 F.2d 1425 (5th Cir. 1993) ...........................................................................................6

*Kilopass Tech., Inc. v. Sidense Corp.*,
 738 F.3d 1302 (Fed. Cir. 2013)........................................................................................3, 4

*Philips Elecs. N. Am. Corp. v. Compo Micro Tech, Inc.*,
 2006 U.S. Dist. LEXIS 76775 (D. Del. Oct. 23, 2006) ............................................................10

*Spectros Corp. v. Thermo Fisher Sci.*,
 2012 U.S. Dist. LEXIS 162151 (N.D. Cal. Nov. 13, 2012).......................................................4

**RULES AND STATUTES**

Federal Rule of Civil Procedure 11 .................................................................................................5

Federal Rule of Civil Procedure 26 .................................................................................................6

Federal Rule of Civil Procedure 30 .................................................................................................7

Federal Rule of Civil Procedure 54 ...............................................................................................10

In its opposition, Chalumeau dismisses the compelling, case-specific examples set forth by Alcatel-Lucent demonstrating that Chalumeau's case against it was objectively and subjectively unreasonable by pointing to its prior settlements with RPX and others.  But the fact that others capitulated to Chalumeau's demands and settled at the outset rather than incur the significant expense of defending themselves is simply evidence that Chalumeau and its parent Acacia's litigation strategy is effective and not that this case has any merits.  RPX is a patent aggregating company that paid ███████ for a license that covered ███████████████████████████████████████████████████████████████████ The value of its license to each of Chalumeau's earlier targets is a fraction of the total amount—and, in fact, ███████████████████████████████████████████████████████████████ The only other settlements ranged from ███████ to ███████  Each of these settlements occurred at the beginning of the litigation before any of the defendants incurred litigation expenses.  These early settlements for small dollars follow the same course that Chalumeau tried to take in this case.  The difference is that Alcatel-Lucent chose to fight back.

Chalumeau seeks to paint this case as another run-of-the-mill patent case and says that its conduct was nothing more than "zealous advocacy expected in contested litigation." Opp. at 13.  But, as set forth below, Chalumeau's opposition fails to address key arguments raised by Alcatel-Lucent regarding Chalumeau's conduct.  The Court should find this case exceptional.[1]

---

[1] Oral argument before the Supreme Court in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, No. 12-1184, on the Federal Circuit's two-part test for exceptionalness under § 285 occurred on February 26, 2014.  This case easily meets the current Federal Circuit test given Chalumeau's litigation conduct and Chalumeau's failure to articulate a reasonable basis for either its claim construction positions or infringement theory, particularly in light of the series of recent Federal Circuit cases interpreting the § 285 standard cited in Alcatel-Lucent's opening

I.  **CHALUMEAU MAKES NO EFFORT TO DEFEND THE REASONABLENESS OF ITS CLAIM CONSTRUCTION POSITIONS**

In its opposition, Chalumeau does not defend the reasonableness of its proposed claim constructions of the three terms highlighted in Alcatel-Lucent's opening brief: "adapter of a first type," "network hub," and "user interface connector." Instead, its opposition brief and the declaration Chalumeau submitted from its expert focus exclusively on the correctness of *Alcatel-Lucent's* constructions, which is not the issue before the Court. For example, Chalumeau argues that Alcatel-Lucent's (and the Court's) construction of the term "adapter of a first type" are wrong because the specification identifies a network system that "identifies the presence of both wireless and *wired* adapters, as contemplated by Chalumeau's proposed construction." Opp. at 6 (emphasis original). But the distinction between wired and wireless adapters was central to Alcatel-Lucent's construction, not Chalumeau's construction, which was simply an "adapter of a particular type." In fact, not once in this litigation, including in its opposition to Alcatel-Lucent's motions for attorneys' fees, did Chalumeau ever offer any plausible construction of what adapters are covered by the claim (i.e., "of a first type") and which adapters are not.[2] That fact alone renders this case exceptional.

Similarly, with respect to Alcatel-Lucent's proposed construction of "network hub," Chalumeau fails to respond to the point raised in Alcatel-Lucent's opening brief: that Chalumeau had no objective basis for its proposed construction where, without explanation, it rewrote the claim language "a network hub *coupled to* a plurality of user interface connectors" to

---

brief. Should the Court disagree, however, it may be in the interest of judicial economy to stay resolution of this motion until the Supreme Court rules in *Octane Fitness,* which is expected by no later than this June.

[2] Chalumeau's argument that the Court's recognition that "[o]nly the adapter of a first type receives power," is "precisely the point that Chalumeau made during the *Markman* hearing – that an adapter of a first type *must be capable of receiving power*…" (Opp. at 7) is nonsensical. In any event, given the remainder of the claim language, Chalumeau's argument that adapters of a first type must be "capable of receiving power" is a tautology, not a valid claim construction.

2

a "network hub *having a* plurality of user interface connectors." Instead, Chalumeau curiously attacks Alcatel-Lucent's proposed construction in an expert declaration it submitted along with its opposition to this motion (but not during claim construction) . As a preliminary matter, that Chalumeau expended more effort in its opposition to Alcatel-Lucent's motion for attorneys' fees than its claim construction briefing does not help Chalumeau or make its conduct during the litigation reasonable. On the merits, even Chalumeau's expert does not defend its proposed construction of network hub, but instead argues that Alcatel-Lucent's proposed construction was "overly narrow and [] based on an outdated and irrelevant portion of the IEEE 802.3 standard…." *See* Narad Decl. ¶¶ 7-8. With respect to *Chalumeau's* proposed construction, all Mr. Narad can opine is that Alcatel-Lucent's "construction is less supported by the specification of the '885 Patent than Plaintiff's proposed construction." *Id.* ¶ 7. Considering that after changing the phrase "coupled to" to "having a," Chalumeau's proposed construction of "network hub" was a mechanical recitation of other functional limitations found elsewhere in claim 8 itself, Mr. Narad's opinion is hardly a ringing endorsement of Chalumeau's construction.

## II.  THERE IS CLEAR AND CONVINCING EVIDENCE OF SUBJECTIVE BAD FAITH

After failing to offer this Court any basis from which it could conclude that Chalumeau's proposed constructions of "adapter of a first type," "network hub," and "user interface connectors" were reasonable, Chalumeau strives in vain to distinguish the half-dozen Federal Circuit decisions cited by Alcatel-Lucent in its opening brief. That case law, however, is clear. Chalumeau's manifestly unreasonable claim construction positions *alone* can be sufficient for this Court to find clear and convincing evidence of subjective bad faith. Indeed, the Federal Circuit's recent decision in *Kilopass*—which Chalumeau dismisses as "relevant only for its recitation of the correct legal standard to be applied under a § 285 analysis" (Opp. at 11)—

3

contains a thorough discussion of the requirement for subjective bad faith. *See Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1311-12 (Fed. Cir. 2013). It noted that "[t]he wide variety of ways available to establish bad faith is why our case law has long required a party seeking fees under § 285 'to prove the other guilty of bad faith litigation by clear and convincing evidence *in light of the totality of the circumstances*.'" *Id.* (emphasis original). Bad faith can be inferred where "the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in a court" or "from circumstantial evidence thereof when a patentee pursues claims that are devoid of merit." *Id.* at 1311 (quotations omitted). Other factors that are indicative of bad faith include "failure to conduct an adequate pre-suit investigation, vexatious or unduly burdensome litigation tactics, misconduct in procuring the patent, or an oppressive purpose…." *Id.* Taken together, Chalumeau's frivolous claim construction positions, facially unreasonable infringement theories, and the palpable indifference with which it pursued its case against Alcatel-Lucent are compelling evidence of its subjective bad faith.[3]

### A. Chalumeau Did Not Seriously Prosecute Its Case During Fact Discovery

In addition to Chalumeau's frivolous claim construction positions, Alcatel-Lucent's opening brief set forth other evidence from which the Court could find subjective bad faith. An example is Chalumeau's initial (and only) infringement contentions. In its opening brief,

---

[3] This is not a case where the Court was faced with a close question of claim construction. The case cited by Chalumeau in its opposition, however, is representative of such a case and stands in stark contrast with the circumstances present here. *See Spectros Corp. v. Thermo Fisher Sci.*, 2012 U.S. Dist. LEXIS 162151, at *12 (N.D. Cal. Nov. 13, 2012). In *Spectros*, (1) the court's initial stated inclination was to ***agree with*** plaintiff's proposed construction and (2) it was only after "extensive oral argument and the tutorial" that the court was "ultimately persuaded" that the defendant's construction was correct. *Id.* Accordingly, the Court concluded that its "reconsideration of its initial inclination and the extensive argument on the issue strongly militate against any suggestion by [defendant] that [plaintiff's] infringement claim was frivolous or objectively unreasonable." *Id.*

4

Alcatel-Lucent highlighted one particularly egregious example from those contentions where Chalumeau contended that the "adapter of a first type" was a common place (RJ-45) plug found at the end of everyday Ethernet cabling. On this point, the silence in Chalumeau's opposition is deafening. Chalumeau does not dispute Alcatel-Lucent's characterization of its allegation, and it does not point to anything in the record (intrinsic, extrinsic or otherwise) that supports its initial "infringement read" or how that infringement read could possibly correspond to its proposed claim constructions. In fact, even its own expert does not address Chalumeau's infringement contentions, but rather offers the carefully worded and vague single paragraph opinion that "at all times—both prior to the Court's claim construction, and following the Court's claim construction—Plaintiff had a reasonable, good faith infringement read on all accused products." Narad Decl. ¶ 11. It is unclear, however, whether the "good faith infringement read" Chalumeau's expert came up with over two years after Chalumeau served its initial infringement contentions and in response to Alcatel-Lucent's fees' motion is the same "infringement read" disclosed in those contentions and which presumably provided Chalumeau's Rule 11 basis for filing this suit. *See* Opening Br. at 15. Moreover, Chalumeau further admits in its Opposition that its infringement contentions were based on publically available information, even though as required by this Court's rules Alcatel-Lucent had already produced its core, non-public technical documents. And despite having access to those confidential technical documents, Chalumeau at no time accounted for them in its infringement contentions. Nor could it even have reviewed those documents with an expert until after the close of fact discovery—two years after filing its Complaint— because it did not disclose any experts pursuant to the Protective Order until November 8, 2013. *See* D.I. 63 ¶ 12; Ex. N.

Instead of defending its infringement contentions, Chalumeau, without citing any authority, suggests that its deficient infringement contentions are not evidence of bad faith

5

because "ALU never moved to strike . . . and never moved to compel Chalumeau to provide more detailed infringement contentions." Opp. at 8. That argument, however, misses the point. Chalumeau's infringement contentions evidence bad faith violations of both Chalumeau's duty to conduct an adequate presuit investigation and its duty to supplement discovery responses under Rule 26. These obligations exist without regard to whether Alcatel-Lucent decided to engage in motion practice and are proper evidence of subjective bad faith. *Cf. Alldread v. City of Grenada*, 988 F.2d 1425, 1436 (5th Cir. 1993) ("Rule 26 imposes no requirement, express or implied, that a motion to compel precede a court's imposition for a sanction ….") Moreover, it is not (nor should it be) Alcatel-Lucent's obligation to highlight apparent deficiencies in Chalumeau's infringement case in motion practice.

With respect to Chalumeau's failure to properly respond to interrogatories directed towards invalidity (secondary considerations) and damages as additional evidence of its haphazard prosecution of its case, Chalumeau again argues that "ALU never asked Chalumeau to supplement its discovery responses or moved the Court to compel Chalumeau to take such action." Opp. at 13. That is simply wrong. On April 24, 2013, Alcatel-Lucent moved this Court to compel Chalumeau to provide answers to Interrogatory No. 6, directed towards secondary considerations, and Interrogatory No. 12, seeking Chalumeau's contention as to a reasonable royalty rate. *See* D.I. 72 at 3. Chalumeau's argument—that it "intended to serve expert reports that would provide additional information and contentions…," Opp. at 13— was already rejected by the Court at the discovery hearing on Alcatel-Lucent's motion to compel when the Court stated, with respect to secondary considerations,

> working on the principle that [Chalumeau] has access to the inventors … they would know as a factual matter what kind of ground they were trumping on when they invented this patent. [¶] And so bottom line is to the extent that Chalumeau's response: We do not have to produce this until expert discovery, I don't agree with that.

6

Hearing Tr. (Apr. 26, 2013) at 24.[4]  Nevertheless, Chalumeau never provided any response to Interrogatory No. 6.  Similarly, Chalumeau never supplemented its response to Interrogatory No. 12 even though the Court noted that Chalumeau "ought to investigat[e] into it and see if you cannot give them an answer" and that "I think that is a contention that they [Chalumeau] ought to have an answer to." *Id.* at 30.[5]  These failures not only ignore this Court's instructions, but also suggest that Chalumeau had no intention of taking this case into the expert phase of litigation.

Chalumeau also dismisses its failure to take a deposition as a cost savings measure made after Alcatel-Lucent provided a response to a request for admission that was served the same day (Sept. 9, 2013) Chalumeau moved to compel the deposition (Opp. at 16), even though the same information that it relies on as the basis for the cancelation was provided in an interrogatory response served nearly one year earlier.  D.I. 124 at 2.

### B.  Chalumeau's Vexatious Motion Practice Is Further Evidence of its Bad Faith

There is also evidence that Chalumeau sought to needlessly drive up Alcatel-Lucent's litigation costs to keep the "economic realities" of this case in its favor through two related motions.  First, it named as a defendant Alcatel-Lucent's French parent holding company and refused to dismiss it even though just before it filed this suit, its sister company acknowledged that it was "highly unlikely" that a French holding company could infringe its patents.

---

[4] The court did acknowledge that Chalumeau did not have to provide information that it did not have, *see id.,* but it is not reasonable to assume that Chalumeau had no evidence relevant to secondary considerations or licensing, particularly given Chalumeau's repeated argument that "a large portion of the power-over-ethernet industry had already taken a license from Chalumeau for the patent-in-suit."  Opp. at 1.

[5] Finally, Chalumeau's failure to properly prepare its Rule 30(b)(6) witness and its contention that it had no obligation to prepare a witness on information known to Chalumeau's parent company Acacia provide the Court with even more evidence of bad faith litigation conduct. Chalumeau's characterization that Alcatel-Lucent "cherry picked" the excerpts cited in its opening brief is curious as its designated witness admitted to be unprepared to the vast majority of Alcatel-Lucent's deposition topics.

Chalumeau, in its opposition, again relies on corporate formalities to argue that the company in that case—Lambda Optical Solutions—is a "separate, legal entit[y]." Opp. at 16 n.8. But this again just willfully ignores how Acacia operates its subsidiaries. *See* Opening Br. at 4-5. In fact, at the time Chalumeau sued Alcatel Lucent S.A., the Acacia employee responsible for the Chalumeau litigation—Mark Frechette—was the same Acacia employee managing the Lambda case. Godziela Decl. ¶ 5. In the motion practice and discovery that followed Chalumeau's failure to dismiss Alcatel Lucent S.A., Alcatel-Lucent identified Robert Vrij as the highest executive responsible for its U.S. operations, and having lost the personal jurisdiction dispute, Chalumeau sought to use that fact to retaliate against Alcatel-Lucent and harass it in another way—by demanding Mr. Vrij's deposition ***before*** it had taken any other damages depositions. Not once did Chalumeau ever offer this Court any basis to believe that Mr. Vrij had any knowledge about the accused products, but nevertheless insisted that Mr. Vrij had to be deposed. The Court did not permit Chalumeau to take that deposition.

      **C.    Chalumeau's Decision to Seek Voluntary Dismissal Does Not Cure Its Litigation Misconduct or Make its Claim Construction Positions Reasonable.**

Throughout its opposition, Chalumeau suggests that its decision to drop its case undercuts Alcatel-Lucent's arguments of bad faith. Chalumeau states that its decision to seek a voluntarily dismissal "was not a reflection of the merits of Chalumeau's infringement claims." Opp. at 9. Rather, Chalumeau admits that "[o]nce it became clear the economics of the case changed, Chalumeau did the responsible thing by dismissing a case that would have cost more for both sides to litigate." *Id.* at 1. But at no time does Chalumeau provide any support or explanation regarding the supposed change in economies. Ultimately, when Alcatel-Lucent would not capitulate to its demands, Chalumeau decided to abandon its case after it had lost its economic leverage and on the eve of the expert reports— which would have required Chalumeau

8

(and not just Alcatel-Lucent) to expand significant resources. In short, Chalumeau should not be permitted to inoculate over two years of frivolous and vexatious litigation, costing Alcatel-Lucent over a million dollars in attorneys' fees, by dropping its case only weeks before expert discovery.

Chalumeau's suggestion that Alcatel-Lucent's license defense (raised in September 2013) was the driving force behind its decision to drop its case is unfounded. Chalumeau waited four months after Alcatel-Lucent raised its license defense before it abandoned its case, which it had argued only months earlier was *futile*. *See* D.I. 134 at 7-8. Needing a reason for the change in position, Chalumeau asks this Court to infer that unidentified documents produced by Alcatel-Lucent in November somehow had a bearing on its decision to abandon its case, arguing that in November "ALU began producing, for the first time, technical documentation relating to components purportedly supplied by RPX members." Opp. at 3. First, Chalumeau's assertion is not accurate. By November 20, 2012, Alcatel-Lucent had produced its core technical documents, including datasheets and specifications from many of its suppliers and manufacturers, and most notably, the supplier of many of Alcatel-Lucent's licensed components: ▬▬▬▬▬▬. Supplemental Shiferman Decl. ¶ 2. Second, although Chalumeau suggests that Alcatel-Lucent improperly withheld producing these documents earlier in discovery, in fact, Chalumeau served additional document requests on Alcatel-Lucent on October 11, 2013, that were significantly broader than what had originally been requested:

> All documents relating to any communications between Defendants and any third parties (including ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬) relating to said third-party's component(s) included in Defendants' PoE Product(s) that Defendants contend "satisfies in whole or in part an element or a step of" claims 8 and 9 of the '885 Patent, as alleged in Defendants' Motion to Amend Its Answer (Dkt. No. 127).

Ex. N at 7 (RFP 59). While Alcatel-Lucent complied with its discovery obligation, producing

9

just over 300 responsive documents on November 12 and 15, these documents, consisting largely of emails between Alcatel-Lucent and [REDACTED] and [REDACTED] had no bearing on the merits of the license defense. Third, and perhaps most important, Chalumeau does not identify a single document from those productions that is the basis for its abrupt decision to drop this case. Nor can it. Alcatel-Lucent's license defense did not turn on the emails or the handful of data sheets, most of which were publicly available, but rather on the fact that the accused products contained chips from *licensed suppliers* that broadly were "for communicating data" and "for identifying the operational protocol of a coupled device" and that [REDACTED] [REDACTED] [REDACTED] Ex. H at 2.

### III. CHALUMEAU'S DISPUTE WITH THE AMOUNT OF FEES IS PREMATURE

Chalumeau finally argues that Alcatel-Lucent has not submitted sufficient documentation to support the amount of attorneys' fees requested and it seeks to discount the fees actually paid by Alcatel-Lucent to its Boston-based patent litigation attorneys to the median rates for non-patent attorneys in Wilmington, Delaware. Chalumeau's complaint is premature. The Advisory Committee Notes to Rule 54(d) are clear that "[t]he rule does not require that the motion be supported at the time of filing with the evidentiary material bearing on the fees. This material must of course be submitted in due course, according to such schedule as the court may direct in light of the circumstances of the case." In fact, that is the exact procedure that the court adopted in *Philips Elecs. N. Am. Corp. v. Compo Micro Tech, Inc.*, 2006 U.S. Dist. LEXIS 76775, at *2 (D. Del. Oct. 23, 2006), cited by Chalumeau, where it required the defendant to submit supporting documentation in its memorandum opinion granting the defendants' motion for attorneys' fees. Should the Court grant Alcatel-Lucent's motion, as stated in its opening brief, Alcatel-Lucent will submit additional evidence concerning the prevailing rates.

        MORRIS, NICHOLS, ARSHT & TUNNELL LLP

        */s/ Paul Saindon*

        _____
        Jack B. Blumenfeld (#1014)
        Paul Saindon (#5110)
        1201 North Market Street
        P.O. Box 1347
        Wilmington, DE  19899
        (302) 658-9200
        jblumenfeld@mnat.com
        psaindon@mnat.com

        *Attorneys for Alcatel-Lucent USA Inc. and Alcatel-Lucent Holdings Inc.*

OF COUNSEL:

J. Anthony Downs
Lana S. Shiferman
Robert Frederickson III
GOODWIN PROCTER LLP
53 State Street
Boston, MA  02109
(617) 570-1000

March 14, 2014 - Original Filing Date
8091488
March 24, 2014 - Redacted Filing Date

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 14, 2014, upon the following in the manner indicated:

| | |
|---|---|
| Brian E. Farnan, Esquire<br>Rosemary J. Piergiovanni, Esquire<br>FARNAN LLP<br>919 North Market Street, 12th Floor<br>Wilmington, DE  19801 | *VIA ELECTRONIC MAIL* |
| James A. Jorgensen, Esquire<br>Michael E. Lee, Esquire<br>Joshua B. Long, Esquire<br>LEE, JORGENSEN, PYLE & KEWALRAMANI, P.C.<br>1800 Augusta Drive, Suite 250<br>Houston, TX  77057 | *VIA ELECTRONIC MAIL* |
| Hemant H. Kewalramani, Esquire<br>LEE, JORGENSEN, PYLE & KEWALRAMANI, P.C.<br>440 West 1st Street, Suite 205<br>Tustin, CA  92780 | *VIA ELECTRONIC MAIL* |

/s/ *Paul Saindon*
Paul Saindon (#5110)

1

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 24, 2014, upon the following in the manner indicated:

| | |
|---|---|
| Brian E. Farnan, Esquire<br>Rosemary J. Piergiovanni, Esquire<br>FARNAN LLP<br>919 North Market Street, 12th Floor<br>Wilmington, DE  19801 | *VIA ELECTRONIC MAIL* |
| James A. Jorgensen, Esquire<br>Michael E. Lee, Esquire<br>Joshua B. Long, Esquire<br>LEE, JORGENSEN, PYLE & KEWALRAMANI, P.C.<br>1800 Augusta Drive, Suite 250<br>Houston, TX  77057 | *VIA ELECTRONIC MAIL* |
| Hemant H. Kewalramani, Esquire<br>LEE, JORGENSEN, PYLE & KEWALRAMANI, P.C.<br>440 West 1st Street, Suite 205<br>Tustin, CA  92780 | *VIA ELECTRONIC MAIL* |

*/s/ Paul Saindon*
Paul Saindon (#5110)