IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **Chalumeau Power Systems LLC,** <br><br> Plaintiff, <br><br> v. <br><br> **Alcatel-Lucent, Alcatel-Lucent USA Inc., and Alcatel-Lucent Holdings Inc.,** <br><br> Defendants. | Civil Action No. 11-1175-RGA |

MEMORANDUM

Pending before this Court is Defendants' Motion for Attorneys' Fees and Costs (D.I. 158) and related briefing. (D.I. 159, 163, 167). The Court heard oral argument on this motion on June 30, 2014. (D.I. 175). Alcatel-Lucent asks that this case be declared "exceptional" so that it may be awarded attorneys' fees spent defending Chalumeau's frivolous claims. Chalumeau responds that its infringement contentions and claim construction positions were not frivolous, and that it did the responsible thing by dismissing the case when the "economics of the case" changed due to Alcatel's licensing defense.

The Patent Act provides that "in exceptional cases [the court] may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Thus, under the statute there are two basic requirements: (1) that the case is "exceptional" and (2) that the party seeking fees is a "prevailing party." The Supreme Court recently defined an "exceptional" case as "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in

1

which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).

That a case be "exceptional" is the only limitation imposed by the text of Section 285. The word "exceptional" is not defined in the Patent Act. The Supreme Court thus attributed to the word its ordinary meaning: "uncommon," "rare," "not ordinary," "unusual," or "special." *Id.* District judges are free to exercise their discretion on a case-by-case basis, considering the totality of the circumstances, when determining whether attorney's fees are appropriate. *Id.* The applicable burden of proof that a litigant must carry in order to be awarded attorney's fees is a preponderance of the evidence. *Id.* at 1758.

Chalumeau does not dispute that Alcatel is the prevailing party. Therefore the only question is whether the case is "exceptional." Alcatel points to two main categories of conduct which it claims warrant finding this case exceptional. The first is Chalumeau's infringement theories and claim construction positions. The second is Chalumeau's overall litigation misconduct, including opposing Alcatel's motion to amend its answer to add a license defense and its late appointment of an expert.

I agree with Alcatel that Chalumeau's infringement theories and claim construction positions were frivolous. Alcatel claims that Chalumeau's infringement theories were based entirely on public documents, and that Chalumeau did not even have their expert look at Alcatel's core technical documents until after November 8, 2013. Chalumeau does not contest this, but maintains that its infringement theories were reasonable. I disagree. Chalumeau's infringement contentions identified an RJ-45 connector as the claimed "adapter." (D.I. 160-2 at 11). Yet even a cursory review of the patent identifies RJ-45 connectors as separate from

2

adapters. '885 patent at 5:26-28 ("In one embodiment of the present invention, the user interface connectors **204** are conventional RJ45 connectors."). The patent repeatedly references user interface connectors as being distinct from infrared adapters, which are given the number **206**. *See* '885 patent at 5:3-6:23 (referencing "user interface connectors **204**" approximately seven times and "infrared adapter **206**" approximately sixteen times). No person reasonably reading the '885 patent would equate an RJ45 connector with the claimed adapter.

Even under Chalumeau's proposed claim construction, an RJ45 connector could not be an adapter. Chalumeau proposed that an "adapter" be construed as "a network interface device that is capable of receiving electrical power and data from the network hub." (D.I. 136 at 11). Yet there was never any argument that an RJ45 connector was capable of receiving power. In its answering brief, Chalumeau defended its infringement contentions, claiming that "[a] thorough pre-filing investigation for each of the accused products occurred and each family of product was separately charted with relevant supporting technical documentation." (D.I. 163 at p. 8 n.3). Noticing that this sentence did not contain a citation, I asked for documents supporting this claim. (D.I. 175 at 36:8-37:24).

In response, Chalumeau admitted that not every accused product family was vetted before filing suit. (D.I. 176 at 1). However, Chalumeau provided the Court with a document detailing the pre-suit investigation of the OmniSwitch 6850 series and how it might infringe claim 8 of the patent. The document is 5 pages long, one of which is a cover page. (letter submitted on July 9, 2014 for *in camera* review). The cover page states that the references used were the OmniSwitch 6850 Users Guide, the OmniSwitch 6850 Data Sheet, and the IEEE Std 802.3af. The remaining four pages contain the claim language broken down into four limitations,

3

snippets from the references outlined in colors corresponding to the claim limitations, and nine bulleted sentences.

Thus, Chalumeau did in fact engage in some semblance of a pre-suit investigation. However, it seems that it was consistent with the meager effort Chalumeau put forth in the rest of the suit. The pre-suit document breaks down the claim into the following four limitations: 1) "network system," 2) "a plurality of user interface connectors each adapted for coupling to a," 3) "remote device," 4) "network hub coupled to the plurality of user interface connectors for communicating data between remote terminals coupled thereto, for identifying the operational protocol of a coupled device that indicates the type of device." These limitation groupings are far too broad, encompassing multiple disputed terms in each group. For example, the Court separately construed "user interface connector," "network hub," "for identifying the operational protocol of a coupled device that indicates the type of device," "type of device," and "operational protocol/operational protocol of a coupled device." (*See* D.I. 136). These five terms are dealt with as one in the pre-suit document. A pre-suit investigation which lumps so many limitations together does not demonstrate an adequate investigation into whether the accused device infringes each and every claim limitation.

Chalumeau's claim construction positions were similarly flawed. While I did agree with some of Chalumeau's proposed constructions, taken as a whole its positions were frivolous. For instance, Chalumeau proposed that an "adapter of a first type" be construed as an "adapter of a particular type." (D.I. 136 at 7). In the claim construction opinion, I noted that such a construction would read out adapters of a "second" and "third" type, and that the specification itself teaches away from powering a wired adapter. (D.I. 136 at 8). As I stated during oral

4

argument concerning this motion, "that was one of the wors[t] proposed constructions I've ever seen so far."[1] (D.I. 175 at 9:25-10:1).

Another of Chalumeau's proposed claim constructions merits attention. That is the "user interface connector," which was described throughout Chalumeau's pre-suit investigation and infringement contentions as RJ-45 ports, present on the network hub. (D.I. 160-2 at 8). Chalumeau's proposed claim construction allowed for the user interface connector to be part of the network hub. (D.I. 136 at 4) (*Compare* "a multi-pin connector through which both data and electrical power can be transmitted," *with* "connector that is separate from the network hub for connecting to remote devices."). Yet even a cursory inspection of the specification would have shown that it is the "hub user connectors," and not the "user interface connectors," that are part of the network hub. '885 patent at 5:12-13 ("The network hub **202** includes a plurality of hub user connectors **208**."); '885 patent at 5:29-33 ("The computers **212-2** and **212-3** may be physically connected to the network **201** via the hub user connectors **208** by physical wire connections, such as twisted-pair wires, between the respective second computer interfaces **216** and the user interface connectors **204**."). As can clearly be seen from Figure 2 of the '885 patent, reproduced below, the user interface connectors **204** are not part of the network hub **202**, but are attached via twisted-pair wires **205**, which connect to the hub user connectors **208**. *See also* '885 patent at 5:4 (referencing "twisted pair cables **205**"); 2:9-10 ("In a twisted-pair cable, the medium dependent interface MDI **144** is an RJ45 connector.").

---

[1] At the time, I had presided over forty *Markman* hearings.

5



FIGURE 2

(Figure 2 of '885 patent). The fact that Chalumeau's infringement contentions relied on the user interface connectors being part of the network hub demonstrates the frivolity of Chalumeau's position on the construction of "user interface connector."

Chalumeau argues that the changed "economics of the case," and not its failed claim construction theories, was the reason that it dropped this suit. Specifically, Chalumeau asserts that because of Alcatel's late assertion of its license defense, the suit was no longer economically feasible. (D.I. 163 at p. 3). Chalumeau blames Alcatel for failing to bring the license defense earlier, but Chalumeau was the one who executed the license, before this lawsuit was filed. (D.I. 127-1 at 30) (license executed on September 30, 2011). If any party is at fault for neglecting to take the potential license defense into account, it is Chalumeau. Alcatel could only learn of it through (expensive) discovery; Chalumeau had it from day one. In fact, Chalumeau opposed

6

Alcatel's motion to add the license defense because it would be futile. (D.I. 134 at 8). If that were the case (and it appears to be simply an argument made without any factual basis), then the legitimate "economics of the case" would not have changed. Alcatel has a different theory about the economics of the case, which I find is supported by the record. Simply put, Alcatel failed to fold before Chalumeau lost its leverage.

Chalumeau filed a frivolous lawsuit with the sole purpose of extorting a settlement fee. When it realized that was not going to happen, it dropped the case. Chalumeau's entire litigation strategy was devoted to stringing out the case in the hopes that Alcatel would incur fees while Chalumeau would not. Chalumeau did not even disclose an expert until November 8, 2013, days before fact discovery ended. (D.I. 175 at 26:4-6). This allowed Chalumeau to keep its costs low while forcing Alcatel to spend considerable sums defending a frivolous lawsuit. Such behavior is exceptional.

For the reasons stated above, Defendants' Motion for Attorneys' Fees and Costs (D.I. 158) is granted.