IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHALUMEAU POWER SYSTEMS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 11-1175 (RGA) |
| | ) | REDACTED - |
| ALCATEL-LUCENT, ALCATEL-LUCENT | ) | PUBLIC VERSION |
| USA INC. and ALCATEL-LUCENT | ) | |
| HOLDINGS INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF LANA SHIFERMAN**
**IN SUPPORT OF ALCATEL-LUCENT'S FEE SUBMISSION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Paul Saindon (#5110)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
psaindon@mnat.com

*Attorneys for Alcatel-Lucent USA Inc. and*
*Alcatel-Lucent Holdings Inc.*

OF COUNSEL:

J. Anthony Downs
Lana S. Shiferman
Robert Frederickson III
GOODWIN PROCTER LLP
53 State Street
Boston, MA  02109
(617) 570-1000

September 30, 2014 - Original Filing Date
October 7, 2014 - Redacted Filing Date

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHALUMEAU POWER SYSTEMS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 11-1175 (RGA) |
| | ) | |
| ALCATEL-LUCENT, ALCATEL-LUCENT | ) | REDACTED - |
| USA INC. and ALCATEL-LUCENT | ) | PUBLIC VERSION |
| HOLDINGS INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF LANA SHIFERMAN**
**IN SUPPORT OF ALCATEL-LUCENT'S FEE SUBMISSION**

I, Lana Shiferman, declare as follows:

1.      I am a partner in the law firm of Goodwin Procter LLP ("Goodwin Procter"),

counsel for Defendants Alcatel-Lucent USA Inc. and Alcatel-Lucent Holdings Inc. ("Alcatel-

Lucent").  I submit this declaration in support of Alcatel-Lucent's Fee Submission.  Unless

otherwise stated, I have personal knowledge of the facts set forth below, and if called as a

witness, could and would competently testify thereto.

**A.      Summary of Attorneys' Fees Incurred by Alcatel-Lucent in its Defense of**
**Chalumeau's Claim of Patent Infringement**

2.      The attorneys' fees incurred by Alcatel-Lucent in defense of this case are

separated into three groups.  First, attorneys from Goodwin Procter served as lead counsel to

Alcatel-Lucent in this matter.  As lead counsel, Goodwin Procter was responsible for all

substantive work in the case, including development of Alcatel-Lucent's defenses, the factual

investigation, legal research, drafting all correspondence and briefs, arguing at all substantive

hearings, and all discovery (drafting and responding to written discovery and attending all

depositions).  Second, attorneys from Morris, Nichols, Arsht & Tunnell LLP ("Morris Nichols")

served as Delaware counsel. As Delaware counsel, attorneys from Morris Nichols were consulted and advised on prior experiences with the Court, local practices, and the application of the Court's local rules and orders. Morris Nichols attorneys also reviewed and commented on all substantive papers, including briefs and discovery requests and responses, were responsible for all filings and attended all hearings. Third, Alcatel-Lucent contracted with Hudson Global Resources Management, Inc. ("Hudson") to have admitted attorneys review certain documents collected by Alcatel-Lucent for responsiveness, relevance, confidentiality, and privilege. In addition, Hudson attorneys and project managers were used to help generate Alcatel-Lucent's privilege log. The total break-down for Alcatel-Lucent's attorneys' fees through August 31, 2014 is as follows:

| Entity | Fees Billed to Alcatel-Lucent through Aug. 31, 2014 |
| --- | --- |
| Goodwin Procter | $1,089,128.55 |
| Morris Nichols | $64,594.50 |
| Hudson | $28,912.50 |
| | Total: $1,182,635.55 |

3.      In addition to those totals, preparation of this fee submission resulted in Alcatel-Lucent incurring additional fees of $53,367.68. In total, Alcatel-Lucent incurred $1,236,003.23 in attorneys' fees in this case. Additional detail and supporting evidence concerning Alcatel-Lucent's attorneys' fees is provided below.

4.      Finally, total disbursements (i.e., expenses) in this matter were $132,947.62. On March 21, 2014, the Clerk of the Court awarded Alcatel-Lucent $13,086.60 in taxable costs. D.I. 170. Alcatel-Lucent seeks an additional $97,098.70 in non-taxable costs which were reasonably

2

necessary to the prosecution of its case. As a result, Alcatel-Lucent requests a total award of $1,333,101.93.

### 1.    Goodwin Procter Attorneys' Fees.

5.    Goodwin Procter is a national law firm with over 800 attorneys across eight offices in the U.S., Asia and Europe. In 2013, it was ranked 39 in the *American Lawyer*'s annual list of top law firms by revenue, and was ranked 40th in the Vault 2013 list of the most prestigious law firms. Goodwin Procter's intellectual property ("IP") litigation practice consists of approximately 80 attorneys and scientists and has been ranked by *IP Law and Business* as one of the top IP defense firms having one of the nation's most active patent litigation practices, and was recognized as a "Tier 1" law firm for the second consecutive year for patent litigation by *U.S. News – Best Lawyers*.

6.    Goodwin Procter sets billing rates based upon a particular lawyer's experience level and area of practice. Every year, Goodwin Procter conducts a careful and comprehensive review of our standard billing rates to ensure they are competitive with rates being charged by "peer" law firms. The process involves a thorough review of Goodwin Procter's rates as compared to comparable firms using several benchmarks and leading data sources, including billing rate surveys from PricewaterhouseCoopers and Citigroup, as real-time data from a tool called *PeerMonitor*®. With this data, Goodwin Procter ensures that its billing rates are commensurate with the prevailing market rates charged by Goodwin Procter's peer firms that have offices in Boston, including Bingham McCutchen LLP, Dechert LLP, Weil, Gotshal & Manges LLP, Wilmer Cutler Pickering Hale & Dorr LLP, Cooley LLP, Foley & Lardner, LLP, K&L Gates LLP, and Morgan, Lewis & Bockius LLP. Among the benchmarks that Goodwin Procter uses to compare its rates is the yearly rankings compiled by the American Lawyer of the largest 50 law-firms by total revenue (the "AmLaw 50"). As part of that yearly review and

3

consistent with its standard practice, billing rates charged to Alcatel-Lucent for the Chalumeau matter increased on January 1, 2013 and January 1, 2014.

7.      Alcatel-Lucent ███████████████████████████████████████ ████████████████████████████████████████    In addition, Alcatel-Lucent required that Goodwin Procter prepare budgets by month for the duration of the case.  To meet the budget, Goodwin Procter leanly staffed its case and, under my direction, work was delegated to associates as appropriate.  For example, associates were responsible for preparing all briefs and discovery requests and responses in the matter, and associates took and defended seven out of the twelve total depositions that occurred in the case.

8.      Lawyers acting under my supervision have reviewed all of the time entries billed to Alcatel-Lucent by Goodwin Procter for purposes of this fee submission.  Attached as Appendix A is a summary of the total hours billed to Alcatel-Lucent by each Goodwin Procter timekeeper by month with a corresponding description of the major case events and activities that took place in that month.  Appendix A was generated by reviewing detailed time entries on each monthly bill submitted to Alcatel-Lucent.  Those detailed time entries are attached as Exhibit A.   The descriptive narrative in the detailed time entries reflect the actual, contemporaneous narratives written by Goodwin Procter timekeepers that appeared on Alcatel-Lucent's monthly bills.  Certain entries have been redacted and/or revised where the time entries reflected confidential and privileged legal advice or work product.  All revisions are contained in brackets ("[]").   In Exhibit A, ████████████████████████████████████████ █████████████████████████████████████.

9.      In addition, as part of my monthly review of each bill before it was submitted to Alcatel-Lucent, ███████████████████████████████████████████

**CONFIDENTIAL**                                        **OUTSIDE COUNSEL ONLY**



10.    The following table summarizes the Goodwin Procter timekeepers that billed to the matter, the hours billed, and the billing rates:

| Time Keeper | Job Title | Law School Degree | Hours Billed | Billing[1] Rate | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | 2012 | 2013 | 2014 |
| J. Anthony Downs | Partner | 1986 | 65.9 | $ ■ | $ ■ | $ ■ |
| Lana Shiferman | Partner | 1999 | 457.7 | $ ■ | $ ■ | $ ■ |
| Robert Frederickson | Associate | 2007 | 803.7 | $ ■ | $ ■ | $ ■ |
| Calvin Wingfield | Associate | 2006 | 71.7 | $ ■ | - | - |
| Nana Atsem | Associate | 2010 | 246.6 | - | $ ■ | $ ■ |
| Ginger Mimier | Department Attorney | 2003 | 212.8 | $ ■ | $ ■ | $ ■ |
| Christine Patton | Senior Paralegal | N/A | 33.9 | $ ■ | $ ■ | $ ■ |
| Alexander Shaw | Case Assistant | N/A | 39.2 | - | $ ■ | $ ■ |

---

[1] ■

**CONFIDENTIAL**                                                    **OUTSIDE COUNSEL ONLY**

| Time Keeper | Job Title | Law School Degree | Hours Billed | Billing[1] Rate | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | 2012 | 2013 | 2014 |
| Eric Romeo | Summer Clerk | N/A | 3.4 | - | $ ███ | - |
| Margaret Sullivan | Summer Clerk | N/A | 13.2 | - | $ ███ | - |
| | | | Totals: 1,950.6 | | | |

11. I, Lana Shiferman, served as lead counsel to Alcatel-Lucent and was responsible for overall case strategy and supervising the day-to-day activities of this case. I graduated from American University Washington College of Law in 1999. I am admitted to practice in Massachusetts and am a member of the U.S. Court of Appeals for the Federal, First, and Second Circuits, the International Trade Commission, the U.S. District Courts for the District of Massachusetts, Illinois and the Eastern District of Texas. Since 2000, I have focused on intellectual property litigation with a particular emphasis on patent litigation covering a broad range of technologies, including immunoassay devices, semiconductor manufacturing equipment and methods, power converters, Internet telephony, wireless garage doors, ATM switching devices, wireless routing systems, and virtual power networks. A complete copy of my biography is attached as Exhibit B. I billed 457.7 hours to this matter through August 2014, as reflected in the below table:

| Year | Billing Rate | Hours Billed | Fees Incurred |
| --- | --- | --- | --- |
| 2012 | $ ███ | 170.9 | $ ███ |
| 2013 | $ ███ | 236.8 | $ ███ |
| 2014 | $ ███ | 50.0 | $ ███ |
| | Total: | 457.7 | $ ███ |

6

**CONFIDENTIAL**                    **OUTSIDE COUNSEL ONLY**

12.    Tony Downs served as the senior partner on this matter, and was consulted and advised on overall case strategy and argued the motions to dismiss and a portion of the *Markman* hearing.  Mr. Downs graduated from the University of Chicago Law School in 1986.  He joined Goodwin Procter in 1988 after clerking for Chief Justice William Rehnquist at the United States Supreme Court.  Since 2000, Mr. Downs' practice has focused on intellectual property litigation matters.  A complete copy of Mr. Downs' biography is attached as Exhibit C.  Mr. Downs billed 65.9 hours to this matter through August 2014, as reflected in the below table:

| Year | Billing Rate | Hours Billed | Fees Incurred |
|------|--------------|--------------|---------------|
| 2012 | $ ███ | 14.4 | $ ████ |
| 2013 | $ ███ | 48.7 | $ ████ |
| 2014 | $ ███ | 2.8 | $ ███ |
| **Total:** | | **65.9** | $ ████ |

13.    Robert Frederickson is a senior associate who served as the lead associate on this matter starting in May 2012.  Mr. Frederickson's work consisted of drafting motions and claim construction briefs, overseeing discovery, defending and taking depositions, and developing invalidity and non-infringement defenses.  Mr. Frederickson is a 2007 graduate of Boston College Law School.  During his time at the firm, Mr. Frederickson has worked primarily on intellectual property litigation matters.  From November 2011 to May 2012, Mr. Frederickson served as a Special Assistant District Attorney for Middlesex County.  In 2013, Mr. Frederickson was selected by Super Lawyers magazine as a "Rising Star" in Massachusetts.  A complete copy of Mr. Frederickson's biography is attached as Exhibit D.  Mr. Frederickson billed 803.7 hours to this matter through August 2014, as reflected in the below table:

7

**CONFIDENTIAL**                                                                              **OUTSIDE COUNSEL ONLY**

| Year | Billing Rate | Hours Billed | Fees Incurred |
|------|-------------|--------------|---------------|
| 2012 | $ ▮ | 162.1 | $ ▮ |
| 2013 | $ ▮ | 568.8 | $ ▮ |
| 2014 | $ ▮ | 72.8 | $ ▮ |
| | Total: | 803.7 | $ ▮ |

14.     Calvin Wingfield, an associate, billed 71.7 hours on this matter from January 2012 through May 2012.  Generally, Mr. Wingfield's work consisted of drafting briefs in support of the two motions to dismiss filed by Alcatel-Lucent.  Mr. Wingfield is a 2006 graduate of Emory University School of Law.  He joined Goodwin Procter in 2007.  During his time at the firm, Mr. Wingfield has worked primarily on intellectual property litigation matters.  His billing rate during the time period of this matter was $ ▮ per hour.  A complete copy of Mr. Wingfield's biography is attached as Exhibit E.  The total amount billed to Alcatel-Lucent for Mr. Wingfield's work was $ ▮

15.     Nana Atsem was the junior associate assigned to this matter.  Generally, Ms. Atsem's work consisted of conducting legal research, drafting motions and written discovery, reviewing documents and preparing for depositions.  Ms. Atsem is a 2011 graduate of University of North Carolina School of Law.  She joined Goodwin Procter in 2011.  Ms. Atsem billed 246.6 hours to this matter through August 2014, as reflected the below table:

| Year | Billing Rate | Hours Billed | Fees Incurred |
|------|-------------|--------------|---------------|
| 2012 | N/A | N/A | N/A |
| 2013 | $ ▮ | 243.7 | $ ▮ |
| 2014 | $ ▮ | 2.9 | $ ▮ |
| | Total: | 246.6 | $ ▮ |

8

**CONFIDENTIAL**                                      **OUTSIDE COUNSEL ONLY**

16.     Ginger Mimier served as a Department Attorney on this matter.  A Department Attorney at Goodwin Procter is a professional-track position designated for attorneys whose experience and ability to work independently is in the range of that expected of a junior to mid-level associate.  Department attorneys are used to support legal functions that may not be able to be economically or efficiently performed by higher billing associates.  Generally, Ms. Mimier's work consisted of conducting legal research, drafting written discovery, reviewing documents and preparing for depositions.  Ms. Mimier is a 2003 graduate of the University of Michigan Law School.  She joined Goodwin Procter in 2006.  During her time at the firm, Ms. Mimier has worked primarily on intellectual property litigation matters.  Ms. Mimier billed 212.8 hours to this matter through August 2014, as reflected in the below table:

| Year | Billing Rate | Hours Billed | Fees Incurred |
|---|---|---|---|
| 2012 | $█████ | 129.0 | $█████ |
| 2013 | $█████ | 44.3 | $█████ |
| 2014 | $█████ | 39.5 | $█████ |
| Total: | | 212.8 | $█████ |

17.     In addition, the Goodwin Procter attorney team for this case was assisted by the firm's litigation paralegals, litigation support staff, library staff, and summer clerks.  The primary paralegal assigned to this matter was Christine Patton.  Ms. Patton billed 33.9 hours to this matter.  Ms. Patton's hourly billing rate to Alcatel-Lucent for this matter was $█████ in 2012, $█████ in 2013, and $█████ in 2014.  Alexander Shaw was the primary case assistant assigned to this matter.  Mr. Shaw billed 39.2 hours to this matter, and his billing rate to Alcatel-Lucent was $███.  Two Summer Clerks (Eric Romeo an d Margaret Sullivan) billed a total of 16.6 hours

**CONFIDENTIAL**                                                      **OUTSIDE COUNSEL ONLY**

to this matter at a rate of $██████    The work performed by the Summer Clerks involved legal research in support of ongoing discovery disputes and claim construction arguments

### 2.    Morris Nichols Attorneys' Fees.

18.    Alcatel-Lucent's Delaware counsel were Jack  Blumenfeld and Paul Saindon from Morris Nichols.  Attorneys from Morris Nichols have entered appearances on behalf of more defendants in patent cases in the District of Delaware than any other law firm since January 2011.  *See* Ex. K; *see also infra ¶* 24.  Attached as Exhibits F and G are the biographies of Jack Blumenthal and Paul Saindon, respectively, who served as Delaware counsel to Alcatel-Lucent in the Chalumeau case.

19.    Attached as Exhibit H are a series of spreadsheets detailing the billing history of attorneys and support staff at Morris Nichols.  Briefly, Mr. Blumenfeld billed a total of ████ hours to the Chalumeau matter for a total fee of $████████    as reflected in the below table:

| Year | Billing Rate | Hours Billed | Fees Incurred |
|---|---|---|---|
| 2012 | $██ | 41.1 | $██████ |
| 2013 | $██ | 16.7 | $██████ |
| 2014 | $██ | 7.8 | $█████ |
| Total: | | 65.60 | $██████ |

10

20.     Mr. Saindon billed a total of 53.7 hours to the Chalumeau matter for a total fee of $████████ as reflected in the below table:

| Year | Billing Rate | Hours Billed | Fees Incurred |
|---|---|---|---|
| 2012 | $███ | 30.8 | $██████ |
| 2013 | $███ | 21.2 | $██████ |
| 2014 | $███ | 1.7 | $█████ |
| | **Total:** | **53.7** | $██████ |

3.      Hudson Attorneys' Fees.

21.     The vast majority of the document review conducted in this case was performed by co-counsel in a related case  and Alcatel-Lucent is not seeking reimbursement for those expenses.  In April 2013, however, a total of 46,179 additional documents were identified that had not been reviewed in the related case.  In order to continue to control its attorney fees, Alcatel-Lucent engaged a third-party vendor to review those documents for relevance, responsiveness, confidentiality, and privilege.  Contract attorneys reviewing the documents billed at a rate of $32 per hour and project managers, who coordinated the review and filtered the documents to promote reviewing efficiencies, billed at a rate of $95 per hour.  In total, Hudson document reviews spent a total of 619.75 hours review emails for responsiveness, privilege and confidential in April 2013, and project managers at Hudson spent 34.1 hours, for a total charge of $23,481.00.  Attached as Exhibit I is a true and correct copy of Hudson's May 1, 2013 invoice.

22.     In addition, Alcatel-Lucent used Hudson contract attorneys and project managers to prepare the first draft of Alcatel-Lucent's privilege log, which was served on August 9, 2013.

**CONFIDENTIAL**                                               **OUTSIDE COUNSEL ONLY**

The total expense for this work was $5,431.5.  The Hudson invoices for May 8, 2013 and May 30, 2013 are also included in Exhibit I.

**B.    Evidence Supporting the "Relevant Community" for Patent Litigation in Delaware.**

23.    The District of Delaware has among the busiest patent litigation dockets in the country.  Attached as Exhibit J are true and correct copies of excerpts of detailed statistical tables from the Annual Report of the Director, Administrative Office of the United States Courts (http://www.uscourts.gov/Statistics/JudicialBusiness/archive.aspx) for the years ending September 30, 2011, September 30, 2012, and September 30, 2013, respectively.  In 2011, of the 4,015 patent cases filed in federal district courts, 380 were filed in the District of Delaware.  Ex J at 164.  In 2012, of the 5,189 patent cases filed, 809 were filed in this Court.  Ex J at 3.  In 2013, of the 6,497 patent cases filed, 1,492 were filed in this Court.  Ex J at 3.  As a result of the number of patent cases filed and the rapid uptick in filings, Delaware patent litigators have entered appearances on behalf of defendants in more cases than they can reasonably be expected to serve in a lead counsel capacity.  Attached as Exhibit K is a report generated by MonitorSuite, a Thomson Reuters product (http://thomsonreuters.com/monitor-suite/) that presents the law firms that have entered appearances on behalf of defendants in patent cases in the District of Delaware since January 2011.  By way of example, Morris Nichols's website identifies a total of nineteen (19) intellectual property lawyers (*see  http://www.mnat.com/attorneys-area.html*). According to the MonitorSuite data, however, the firm has entered appearances on behalf of defendants in 757 patent cases since January 2011 (Ex. K).

24.    Attached as Exhibit L is a chart listing the forty-eight *Markman* decisions issued by Judge Andrews available on Westlaw. Each *Markman* opinion was reviewed to identify the name and office location of the attorney(s) who argued on behalf of defendants.  Arguing

12

**CONFIDENTIAL**                                        **OUTSIDE COUNSEL ONLY**

counsel was readily identifiable on 34 of the 48 decisions.  Of those 34 decisions, 31 were argued exclusively by out-of-forum (i.e., non-Delaware) counsel.  In total, only 3 of the 71 attorneys that were identified as arguing on behalf of defendant(s) in a *Markman* proceeding before this Session were from Delaware.

      **C.**      **Evidence Supporting the "Prevailing Market Rates in the Relevant Community."**

25.      Attached as Exhibit M is a true and correct copy of the American Intellectual Property Law Associations ("AIPLA") publication entitled *Report of the Economic Survey 2013*, dated July 2013.  In the Report, the AIPLA published the results of a survey that it had conducted regarding costs of patent cases.  For patent infringement lawsuits where between $1-$25 million was at risk, the median litigation costs (including all attorneys' fees and expenses) through the end of discovery was $1.5 million and $1.4 million in 2011 and 2013, respectively. Ex. M at 34.  For patent infringement litigations brought by a non-practicing entity with between $1 and $25 million at stake, the median litigation costs (including all attorneys' fees and expenses) was $983,000.  *See* Ex. M at 35.

26.      The AIPLA Report of the Economic Survey for 2013 also presents first quartile (25%), mean (50%), and third (75%) quartile billing rates for intellectual property litigators by region, size of law firm, specialty area, etc.  *See* Ex. M at I-34, I-48.  For law firms that have between 50 – 100 full-time intellectual property attorneys, the reported billing rates for partners (all experience levels) and associates (all experience levels) were as follows:

| Position | First Quartile | Mean | Third Quartile |
|---|---|---|---|
| Partners | $451 | $564 | $700 |
| Associates | $300 | $398 | $453 |

Ex. M at I-34, I-48.

13

27.     Average, effective billing rates were calculated for the Goodwin Procter attorneys that billed to the Chalumeau matter in 2012 for comparison purposes.  These averages were calculated by dividing the total dollars billed to Alcatel-Lucent by the total hours worked, as reflected in the below table:

| Experience Level | Total Amount Billed to Alcatel Lucent (2012) | Total Hours Billed (2012) | Average Effective Billing Rates |
|---|---|---|---|
| Partners | $ █████ | 185.3 | $ ████ |
| Non-Partners | $ █████ | 362.8 | $ ████ |

28.     Attached as Exhibits N to P are true and correct copies of data obtained from PeerMonitor.  PeerMonitor is a subscription-based service that collects actual billing rates from participating law firms, aggregates and anonymizes the information, and allows subscribers to generate reports based on practice area, office location, law firm size, and experience level.  PeerMonitor is one of the tools that Goodwin Procter uses in the ordinary course of its business to set its rates as compared to its "peer" firms.  *See supra ¶* 6.

29.     Exhibit N consists of a chart of 2012 billing rates for (1) patent litigators with different levels of experience that (2) work for law-firms in the AmLaw 50 that participate in PeerMonitor.  The report is limited to AmLaw 50 firms as a proxy for law-firms of similar size and reputation to Goodwin Procter.  In addition to containing Goodwin Procter's average billing rate for patent litigators by experience and the median billing rate for the participating AmLaw 50 firms, PeerMonitor also reports billing rates within the first and second deviation of the median.

30.     Exhibit O presents the actual and available 2012 billing rates across *all* practice areas for law firms in the AmLaw 100 (not AmLaw 50) with Wilmington, Delaware offices.

14

Exhibit P presents the actual and available 2012 billing rates across all *litigation* practice areas for law firms in the AmLaw100 with Wilmington, Delaware offices.

31.    The PeerMonitor data presents the median billing rates as well as billing rates within one and two standard deviations from the median.  For the Court's reference, attached as Exhibit R is a true and correct copy of Statistics by David Freedman, Robert Pisani, and Roger Purves.  Standard deviation is "sort of average deviation."  Ex. R at 59.  "The [standard deviation] says how far away numbers on a list are from their average.  Most entries on the list will be somewhere around one [standard deviation] away from the average.  Very few will be more than two or three SDs away."  *Id.*  As a general rule, "[r]oughly 68% of the entries on a list (two in three) are within one [standard deviation] of the average, the other 32% are further way.  Roughly 95% (19 in 20) are within two [standard deviations] of the average, the other 5% are further away."  *Id.* at 61.

**D.    Evidence Concerning Alcatel-Lucent's Reasonably Necessary Expenses**

32.    In addition to the attorneys' fees described above, Alcatel-Lucent also incurred non-taxable costs that were reasonably necessary to the prosecution of the litigation.  Specifically, Alcatel-Lucent incurred the following expenses:

| Description of Activity | Costs |
|---|---|
| Prior art searching | $8,460.00 |
| Electronic discovery costs (not including document review or attorney time), not already awarded (*see* D.I. 170). | $41,894.65 |
| Travel expenses | $20,448.85 |
| Office costs such as express delivery, teleconference expenses, and couriers | $2,078.73 |
| Depositions – Court reporters, transcripts, and videographers | $24,216.47 |
| **Total** | **$97,098.70** |

15

**CONFIDENTIAL**                                                                 **OUTSIDE COUNSEL ONLY**

33.     Attached as Exhibit S are true and correct copies of the invoices for the two prior art searches that Goodwin Procter commissioned at the beginning of the case.  The total cost to Alcatel-Lucent for conducting prior art searching was $8,460.00

34.     Attached as Exhibit T are true and correct copies of the invoices for electronic discovery charges incurred by Alcatel-Lucent over the course of this case.  The electronic discovery costs fall into two categories.  First, it is common for document production vendors to charge on a per-gigabyte basis to "process" native electronic files.  These processing charges are reasonably necessary for the prosecution of the case because the processing preserves and extracts metadata that must be produced under the Court's Default Standard for Discovery, including Discovery of Electronically Stored Information ("ESI") (¶ 5(e)).  Further, processing extracts text (when possible) and indexes the files to allow for later searching using search terms.  In addition, the processing permits the native files (such as PDFs, Word documents, Excel spreadsheets, email messages) to be viewable in commercially-available document review software.

35.     The second category of electronic discovery charges relate to preparing native documents for production.  The Clerk of the Court already awarded Alcatel-Lucent $13,086.60 of these costs pursuant to Alcatel-Lucent's Bill of Costs.  *See* D.I. 170.  Relevant charges include converting the native files into "single page TIFF images" as required by the Default Standard for Discovery (¶ 5(c)) and branding the TIFF images with an applicable Bates numbers.  Bates numbering was essential in this case in order to track the over 1.1 million pages of documents produced by Alcatel-Lucent in this case.  Finally, for those files where there was no extractable text, Alcatel-Lucent incurred fees associated with performing Optical Character Recognition on produced documents.  *See* Default Standard for Discovery ¶ 5(c).  The total cost of electronic

16

**CONFIDENTIAL**                                    **OUTSIDE COUNSEL ONLY**

discovery costs to Alcatel-Lucent for this case were $54,981.25. After subtracting the $13,086.60 awarded in the Clerk's Taxation of Costs (D.I. 170 at 4), Alcatel-Lucent requests reimbursement of $41,894.65.

36.    Attached as Exhibit U is a summary spreadsheet of the travel-related expenses incurred by Alcatel-Lucent in connection with its attorneys attending depositions and hearings in this case. In addition to the costs of traveling to the depositions, Alcatel-Lucent requests $24,216.47 in expenses incurred with court reporters, videographers, and obtaining transcripts. These costs were not awarded to Alcatel-Lucent in the Clerk's Taxation of Costs because the transcripts were not "admitted into evidence at trial or otherwise used in the resolution of a material issue in this case." D.I. 170 at 2. Attached as Exhibit Q are true and correct copies of invoices received from court reporters and videographers in connection with depositions taken in this case.

37.    Attached as Exhibit V is a summary spreadsheet of miscellaneous costs incurred by Alcatel-Lucent in connection with this case such as Federal Express charges and courier charges. The total of these miscellaneous charges was $2,078.73.

38.    During discovery, Alcatel-Lucent disclosed that revenue of the accused products from December 1, 2005 through September 30, 2012 totaled just under $▮▮▮▮▮▮. The asserted patent was filed on June 11, 1997, issued on November 23, 1999, and expires on June 11, 2017, thus adding another potential five years of future damages.

Dated:  September 30, 2014 - Original Filing Date    */s/ Lana S. Shiferman*
        October 7, 2014 - Redacted Filing Date      Lana Shiferman

17

**CONFIDENTIAL**                                    **OUTSIDE COUNSEL ONLY**